**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

IN RE:              *      CASE NO: <u>23-53043</u>

                            *      (Chapter 11)

Welcome Group 2, LLC[1]     *

                            *      (Judge Mina Nami Khorrami)

                            *

Debtor/Debtor-in-Possession.     *      (Jointly Administered)

## <u>NOTICE OF EMERGENCY MOTION BY THE DEBTORS/DEBTORS-IN-POSSESSION FOR AN ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION</u>

Welcome Group 2, LLC[1], Debtor and Debtor in Possession ("Debtor"), has filed an Emergency Motion for the entry of an order for an Order Authorizing use of Cash Collateral and Providing Adequate Protection, a copy of which is attached hereto.

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the Motion, then on or before **twenty-one (21) days from the date set forth in the Certificate of Service for the Motion**, you must file with the Court a response explaining your position by mailing your response by regular U.S. Mail to:

**U.S. Bankruptcy Court, 120 West Third Street, Dayton, OH 45402**

OR your attorney must file a response using the Court's ECF system.

If you mail your request and response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also send a copy of your response either by 1) the Court's ECF system or 2) regular U.S. Mail to:

**Thomsen Law Group, LLC, Counsel for Debtor, 140 North Main Street, Suite A, Springboro, OH 45066**

**Office of the U.S. Trustee, 170 North High Street, Columbus, OH Suite 200, 43215**

---

[1] Debtors include Welcome Group, LLC, Dayton Hotels, LLC (Case No. 23-53044) and Hilliard Hotels, LLC (Case No. 23-53045)

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without further hearing or notice.

**PLEASE TAKE NOTICE THAT THE DEBTOR HAS FILED A MOTION FOR AN EXPEDITED HEARING TO CONSIDER CERTAIN THIS MOTION. THE DEBTORS SHALL SERVE NOTICE OF THE EXPEDITED HEARING DATE PURSUANT TO FURTHER ORDER(S) OF THIS COURT.**

Date of Service: November 30, 2023

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Darlene E. Fierle (0081217)
Denis E. Blasius (0082617)
140 North Main Street, Suite A
Springboro, Ohio 45066
937-748-5001
937-404-6630 (Fax)
dblasius@ihtlaw.com
ithomsen@ihtlaw.com
dfierle@ihtlaw.com

*Thomsen Law Group, LLC*
*Counsel for Debtors/Debtors-in-Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| IN RE: | * | CASE NO:  23-53043 |
| | * | (Chapter 11) |
| Welcome Group 2, LLC, et., al.[2] | * | |
| | * | |
| | * | (Judge Mina Nami Khorrami) |
| | * | |
| Debtor/Debtor-in-Possession. | * | (Jointly Administered) |

**EMERGENCY MOTION BY THE DEBTORS/DEBTORS-IN-POSSESSION
FOR ORDERS UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363,
FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2:
(I) AUTHORIZING DEBTOR TO CONTINUE TO USE CASH COLLATERAL; (II)
GRANTING ADEQUATE PROTECTION; (III) SCHEDULING AND APPROVING THE
FORM AND METHOD OF NOTICE OF HEARING; AND
(IV) GRANTING RELATED RELIEF**

The above captioned debtors and debtors-in-possession herein (collectively, the

"**Debtors**"), by and through proposed counsel, and hereby respectfully move this Court for the

entry of an Order Authorizing the Debtors to continue to use cash collateral of, and to provide

adequate protection to, RSS WFCM2019-C50 – OH WG2, LLC c/o Rialto Capital Advisors,

LLC[3] (**the "Secured Lender"**), along with other requested relief (the "**Motion**"), pursuant to the

provisions of 11 *U.S.C.* §§ 105, 361, and 363 *Federal Rules of Bankruptcy Procedure*, *Rules*

2002, 4001, 6004 and 9014 and *Local Bankruptcy Rules* 4001-1, 4001-2 and 6004-1, in

substantially the form attached hereto as Exhibit "A" and a revised cash collateral budget (the

"Revised Budget," a copy of which is attached as Schedule 1 to Exhibit "A" hereto).

---

[2] The Debtors are Welcome Group 2, LLC (Case No. 23-53043), Dayton Hotels, LLC (Case No. 23-53044), and
Hilliard Hotels, LLC (Case No. 23-53045).
[3] RSS WFCM2019-C50 – OH WG2, LLC is the successor in interest to UBS AG. RSS WFCM2019-C50 – OH
WG2, LLC and UBS AG are referred to collectively herein as "Secured Lender".

The disclosure of information required pursuant to Bankruptcy Rule 4001(B) and Local

Bankruptcy Rule 4001-2 is contained in the *Motion for Interim Order (I) Authorizing Debtor to*

*use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV)*

*Scheduling and Approving the Form and Method of Notice of Final Hearing; and (V) Granting*

*Related Relief* (the "Cash Collateral Motion") (Doc. 15). A true and accurate copy of the Cash

Collateral Motion is attached hereto as Exhibit "B" and is incorporated by reference herein.


**The Debtor is separately filing a motion requesting an expedited hearing on the relief
requested in this filing and to reduce the deadline for objections hereto. The time in
which to respond to this motion or application will be set forth in a separate Order of
this Court (on the motion for expedited hearing or disposition) and shall be served as
required by the Court.**


A Memorandum In Support is attached.

Respectfully Submitted

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Darlene E. Fierle (0081217)
Denis E. Blasius (0082617)
140 North Main Street, Suite A
Springboro, Ohio  45066
937-748-5001
937-748-5003 (Fax)
ithomsen@ihtlaw.com
dfierle@ihtlaw.com
dblasius@ihtlaw.com

*Thomsen Law Group, LLC*
*Counsel for Debtors/Debtors-in-Possession*

## MEMORANDUM

1.      On September 1, 2023, ("the Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code ("the Bankruptcy Code"). The Debtors intend to operate their businesses as a Debtor-in-Possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      No creditors' committee has yet been appointed in this case by the United States Trustee. No trustee or examiner has been appointed in the Debtor's Chapter 11 case.

3.      The Debtors filed these Chapter 11 proceedings in order to reorganize their debts and maintain their operations and employees.

4.      This Court has jurisdiction over this Motion pursuant to 28 *U.S.C.* §§157 and 1334. Venue is proper pursuant to 28 *U.S.C.* §§1408 and 1409. The subject matter of this Motion is a core proceeding pursuant to 27 U.S.C. § 157(b).

5.      The statutory predicates for the relief requested herein are Sections 105(a), 361, 363, and 364 of the Bankruptcy Code, Federal Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Bankruptcy Rules 4001-2 and 6004-1.

6.      InnViteOpco, Inc., owned solely by Abhijit (Andy) Vasani is the sole member and the manager of each of the Debtors. Each of the Debtors own a hotel located in Southwest Ohio. Debtor Welcome Group 2, LLC owns and operates the Super 8 located at 2440 National Road, Zanesville, Ohio 43701. Debtor Hillard Hotels, LLC owns and operates the Hampton Inn located at 1600 Hampton Court, Sidney, OH 45365. Debtor Dayton Hotels, LLC owns and operates the Hotel at Dayton South located at 8099 Old Yankee Road, Dayton, Ohio 45458.

7.      The factual background regarding the Debtor, including its business operations and the events leading to this Chapter 11 Case, is set forth in the *Declaration of Andy Vasani in*

*Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") filed

contemporaneously herewith, which is incorporated herein by reference.

8.      On September 6, 2023, the Debtors filed their *Motion for Interim Order (I)*

*Authorizing Debtor to use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying*

*the Automatic Stay; (IV) Scheduling and Approving the Form and Method of Notice of Final*

*Hearing; and (V) Granting Related Relief* (the "Cash Collateral Motion") (Doc. 15).[4]

9.      On September 14, 2023, the Court entered the *INTERIM ORDER PERMTTING*

*USAGE OF CASH COLLATERAL AND PROVDING ADEQUATE PROTECTION TO*

*PURPORTED SECURED CREDITORS FOR THIS USAGE AND SCHEDULING A FINAL*

*HEARING ON USAGE OF CASH COLLATERAL* (Doc. 58).

10.      On October 31, 2023, the Court entered the *FINAL ORDER PERMTTING USAGE*

*OF CASH COLLATERAL AND PROVDING ADEQUATE PROTECTION TO PURPORTED*

*SECURED CREDITORS FOR THIS USAGE* (the "Order") (Doc. 118)

11.      The Order authorized use of cash collateral to pay expenses as set forth in the

budget attached thereto as Schedule 1 (the "Budget"), among other conditions. The Budget

period commenced on the petition date and continues until December 3, 2023.

12.      As adequate protection for any diminution in the value of the Secured Lender's

asserted interests in the Cash Collateral, the Order required the Debtor to make payments to the

Secured Lender of $36,000.00 per month as set forth in the Budget. The Order also required

Debtor to make scheduled payments of interest and principal to the Small Business

Administration.

---

[4] Corresponding Motions were filed by Dayton Hotels, LLC (Case No. 23-53044), and Hilliard Hotels, LLC (Case No. 23-53045). Joint Administration of these three cases was ordered on September 16, 2023 (Doc. 68).

13.     The Debtor has made all payments to the Secured Lender and the Small Business Administration as required by the Order.

14.     Counsel for the Debtors initiated communication with counsel for Secured Lender on November 17, 2023 to discuss continued use of Cash Collateral. On November 22, 2023, counsel for Debtors and counsel for Secured Lender were able to speak over the phone regarding the request. Debtor proposed making the same payments to Secured Lender and submitted a revised budget reflecting same. Secured Lender requested some additional language be added to any agreed order for continued use of Cash Collateral, to which Debtor agreed at the time. Counsel for Secured Lender informed counsel for Debtors that Secured Lender would be unable to review the revised budget until Monday November 27, 2023, but did not expect the request to be an issue. After several attempts at communication this week, Debtors were informed after business hours on November 29, 2023 that Secured Lender would not agree to continued use of Cash Collateral. Secured Lender cited several questions regarding the October monthly operating reports, which reports were timely filed on November 21, 2023. Debtors are working on these requests, but the Secured Lender has not agreed to continued use of Cash Collateral in the interim, and use of Cash Collateral expires December 3, 2023.

15.     Accordingly, the Debtor respectfully requests that this Court enter an order in substantially the form attached hereto as Exhibit "A" hereto, authorizing continued use of Cash Collateral, pursuant to the terms and conditions stated therein and in accordance with the budget attached thereto as Schedule "1" (the "Revised Budget").

**<u>RELIEF REQUESTED</u>**

16.     It is imperative that the Debtors obtain authority for continued use of cash collateral in order to continue funding necessary business expenses and to fund the costs

associated with the administration of this case. The Debtors have set forth a proposed order (the

"Proposed Order", a copy of which is attached hereto as the Exhibit "A") and a revised cash

collateral budget (the "Revised Budget", a copy of which is attached as Schedule 1 to the

Proposed Order) providing for the use of Cash Collateral, and authorizing the terms and

conditions of the Debtors' continued use of Cash Collateral.

17.     The Debtors commenced this case with the goal of restructuring its debts and

obligations in such a manner that provides maximum return to the creditor constituents while

maintaining operations. To accomplish this goal, however, the Debtors will require the continued

use of cash collateral through plan confirmation. Without the use of this cash collateral, the

Debtor would be required to terminate all business operations, which would, in turn, result in the

loss of employees' jobs and significant diminution in the value of the Debtor as a going concern.

## **BASIS FOR RELIEF**

18.     Section 363(a) of the Bankruptcy Code provides that for purposes

of that section:

> "cash collateral" means cash, negotiable instruments, documents
> of title, securities, deposit accounts, or other cash equivalents
> whenever acquired in which the estate and an entity other than the
> estate have an interest and includes the proceeds, products,
> offspring, rents, or profits of property and the fees, charges,
> accounts or other payments for the use or occupancy of rooms and
> other public facilities in hotels, motels, or other lodging properties
> subject to a security interest as provided in section 552(b) of this
> title, whether existing before or after the commencement of a case
> under this title.

19.     By this Motion, the Debtors request authority to continue to use cash collateral

pursuant to the terms set forth in the Proposed Order. The Debtors have made all adequate

protection payments pursuant to the Order. The Cash Collateral Motion sets forth the rights

asserted by Secured Lender. The terms of the Proposed Order are substantially similar to the current Order authorizing use of Cash Collateral (Doc. 120), however the Revised Budget permits use of Cash Collateral for an additional 13 week period.

20.    Under Section 363(c)(2) of the Bankruptcy Code, the Debtor may not use cash collateral without the consent of the secured creditor or authority granted by the Court. Secured Lender has informed Debtors that it does not consent to continued use of Cash Collateral. As such, the Debtor is seeking authority from this Court.

21.    The Debtors' continued use of cash collateral, including the Debtor's agreement to provide replacement liens and other assurances as adequate protection in connection with such use, is authorized pursuant to § 363(c) of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code provides as follows: "If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204 or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." However, section 363(c)(2) provides that the Debtor's use of cash collateral is prohibited unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

## USE OF CASH COLLATERAL SHOULD BE APPROVED

22.    Debtor desires to continue to use cash collateral as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral") and provide adequate protection to the Secured Lender.

23.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways (*see*, *e.g.*, 11 *U.S.C.* § 361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization"); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

24.     Debtors and Secured Lender previously agreed to the use of the Cash Collateral pursuant to the current Order. Debtors have complied with all terms of that Order, however Secured Lender will not consent to continued use of Cash Collateral, under the same terms and same adequate protection payment amount as the current Order. Though the Revised Budget will reflect a loss during this period, **this is typical for hotels in the Dayton and Columbus areas during this season. Debtors plan for this every year, and have adequate reserves on hand to meet all budget requirements and continue to make adequate protection payments to Secured Lender.** Debtors need authority to continue to use the Cash Collateral to fund ongoing business operations. The Debtor intends to continue provide sufficient adequate protection to Secured Lenders in the same manner as required by the previous Order, and as more fully set forth herein and in the Proposed Order.

25.     Adequate protection is provided to Secured Lender by the Debtors by using Cash Collateral only in accordance with the Revised Budget (except as otherwise authorized by this Court) and by making the payments to Secured Lender as stated therein. Adequate protection is

also provided by the re-granting of the pre-petition security interests to Secured Lender (not to extend beyond the collateral that secured the Loan from Secured Lenders pre-petition).

26.     In the event the Debtors are not permitted to use Cash Collateral, they will be unable to pay their necessary obligations to conduct business operations, and its employees will be severely impacted. In short, the failure to utilize Cash Collateral will result in immediate and irreparable harm to the Debtors.

27.     The Revised Budget details the necessary expenditures for the continued operations and viability of the Debtors, including the proposed adequate protection payments.

28.     The Debtors prepared the Revised Budget using historical data and the current state of affairs. The Debtors assert that the Revised Budget is feasible and the expenses stated therein are reasonable and necessary for the continued operation and viability of the Debtors. The Revised Budget is based upon the best information available to the Debtors and the Debtors' principal.

29.     Therefore, the Debtors request that the Court consider entry of the Proposed Order.

## **COMPLIANCE WITH LOCAL RULE 4001-2(B)**

30.     Pursuant to *Local Rule* 4001-2(b), Debtor states that none of the terms included in the Proposed Order contain any of the provisions set forth in *Local Rule* 4001-2(b)(2)(A) through (b)(2)(Q).

## **NO PRIOR REQUEST**

31.     No previous request for the relief sought herein has been made to this Court or any other court for the Revised Budget period.

## **NOTICE**

32.       Notice of this Motion will be provided to: (i) the Columbus office of the United

States Trustee for Region 9: Southern District of Ohio; (ii) RSS WFCM2019-C50 – OH WG2,

LLC, by and through counsel to its special service Rialto Capital, Advisors, LLC; (iii) the United

States Small Business Administration; (iv) U.S. Attorney Columbus, (v) U.S. Attorney General,

(vi) U.S. Foods, Inc. (vii) Itria Ventures, LLC, and (viii) each of the Debtors' largest 20

unsecured creditors. In light of the nature of the relief requested herein, the Debtor submits that

no other or further notice is required. **Because of the irreparable harm that threatens the**

**Debtors if the relief requested herein is not timely granted, the Debtors have requested that**

**an expedited hearing be held to consider this Motion and to approve the notice provided**

**herein.** A copy of the Motion will be served upon the parties noted above via telecopier, e-mail,

ECF transmission, or overnight delivery, delivery prepaid, as soon as practicable after the entry

of an order approving the form and manner of the Notice or as otherwise ordered by the Court.


**Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider**

**this Motion.   The Debtors shall serve notice of the expedited hearing date pursuant to**

**further order(s) of this Court.**


For the reasons set forth herein and in the Proposed Order attached hereto as Exhibit "A",

Debtor respectfully requests the authority of this Court to authorize it to continue to use cash

collateral and to enter into the Proposed Order attached hereto as Exhibit "A".

Respectfully Submitted:

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Darlene E. Fierle (0081217)
Denis E. Blasius (0082617)
140 North Main Street, Suite A
Springboro, Ohio  45066
937-748-5001
937-748-5003 (Fax)
ithomsen@ihtlaw.com

*Thomsen Law Group, LLC*
*Counsel for Debtors/Debtors-in-Possession*

**EXHIBIT "A"**
**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | * | Case No. 2:23-bk-53043 |
| WELCOME GROUP 2, LLC, *et al.*,[5] | * | Chapter 11 |
| | * | Judge Mina Nami Khorrami |
| Debtors. | * | |
| | * | Jointly Administered |

**ORDER EXTENDING FINAL ORDER PERMITTING USAGE OF CASH**
**COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO PURPORTED**
**SECURED CREDITORS FOR THIS USAGE (*Doc*. ___)**

This matter comes before the Court on an expedited basis for the entry of an Order

Authorizing Continued use of Cash Collateral (the "Motion") (Doc. __). Having considered the

Motion, and for good cause shown and it appearing to the Court that it is in the best interests of

all creditors herein to enter this order, it is hereby,

---

[5] The Debtors and the last four digits of their federal tax identification numbers are as follows:  Welcome Group 2, LLC (6795), Hilliard Hotels, LLC (6063), and Dayton Hotels, LLC (1123).  The Debtors' headquarters are located at 5955 E. Dublin Granville Road, New Albany, Ohio 45305.

ORDERED that the Final Order Permitting Usage of Cash Collateral and Providing

Adequate Protection to Purported Secured Creditors For This Usage (Re: Docket No. 15) (*Doc*.

118) (the "Final Order") is hereby extended in accordance with the terms of the Revised Budget

appended hereto as Schedule 1.


IT IS SO ORDERED.

Submitted By:

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Denis E. Blasius (0082617)
Darlene E. Fierle (0081217)
140 North Main Street, Suite A
Springboro, Ohio 45066
937-748-5001
937-404-6630 (Fax)
dblasius@ihtlaw.com
ithomsen@ihtlaw.com
dfierle@ihtlaw.com

*Thomsen Law Group, LLC*
*Counsel for Debtors/Debtors-in-Possession*



Copies to: Default List Plus Top 20

## SCHEDULE 1

e Group 2Cash Collateral Budget
ith Cash Collateral Budget
tilliard  Cash Collateral Budget
ement and Usage of Cash Collateral

| | Dec Week1 | Dec Week2 | Dec Week3 | Dec Week4 | Total | Jan Week1 | Jan Week2 | Jan Week3 | Jan Week4 | Jan Week5 | Total | Feb Week1 | Feb Week2 | Feb Week3 | Feb Week4 | Feb Week5 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Summary** | | | | | | | | | | | | | | | | | |
| **Operating Revenue** | | | | | | | | | | | | | | | | | |
| Room Department | 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | 196,000.00 | 38,000.00 | 38,000.00 | 38,000.00 | 38,000.00 | 38,000.00 | 190,000.00 | 33,800.00 | 33,800.00 | 33,800.00 | 33,800.00 | 33,800.00 | 169,000.00 |
| **Total Operating Revenue** | $49,000.00 | $49,000.00 | $49,000.00 | $49,000.00 | 196,000.00 | $38,000.00 | $38,000.00 | $38,000.00 | $38,000.00 | $38,000.00 | 190,000.00 | $33,800.00 | $33,800.00 | $33,800.00 | $33,800.00 | $33,800.00 | $169,000.00 |
| **Operational Expenses** | | | | | | | | | | | | | | | | | |
| Room Department and Room | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 6,000.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 3,000.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 3,000.00 |
| Payroll/Contract Wages | 18,900.00 | 18,900.00 | 18,900.00 | 18,900.00 | 75,600.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 70,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 70,000.00 |
| **Total Departmental Expenses** | $ 20,400.00 | $ 20,400.00 | $ 20,400.00 | $ 20,400.00 | 81,600.00 | $ 14,600.00 | $ 14,600.00 | $ 14,600.00 | $ 14,600.00 | $ 14,600.00 | 73,000.00 | $ 14,600.00 | $ 14,600.00 | $ 14,600.00 | $ 14,600.00 | $ 14,600.00 | $ 73,000.00 |
| Room Department Income | 27,250.00 | 27,250.00 | 27,250.00 | 27,250.00 | 109,000.00 | 23,400.00 | 23,400.00 | 23,400.00 | 23,400.00 | 23,400.00 | 117,000.00 | 19,200.00 | 19,200.00 | 19,200.00 | 19,200.00 | 19,200.00 | 96,000.00 |
| Miscellaneous Income | 750.00 | 750.00 | 750.00 | 750.00 | 3,000.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 3,000.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 3,000.00 |
| **Total Departmental Income** | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 | 112,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | 120,000.00 | $ 19,800.00 | $ 19,800.00 | $ 19,800.00 | $ 19,800.00 | $ 19,800.00 | $ 99,000.00 |
| **Undistributed Operating Expense** | | | | | | | | | | | | | | | | | |
| Administrative & General | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | 39,000.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 36,000.00 | 6,600.00 | 6,600.00 | 6,600.00 | 6,600.00 | 6,600.00 | 33,000.00 |
| Information & Telecom System | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 9,000.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 6,000.00 | 1,120.00 | 1,120.00 | 1,120.00 | 1,120.00 | 1,120.00 | 5,600.00 |
| Property Operations & Maintenance | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 18,000.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 14,000.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 18,000.00 |
| Franchise Fees/Sales and marketing | 12,750.00 | 12,750.00 | 12,750.00 | 12,750.00 | 51,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 45,000.00 | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 | 39,000.00 |
| Utilities | 8,250.00 | 8,250.00 | 8,250.00 | 8,250.00 | 33,000.00 | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 | 39,000.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 36,000.00 |
| **Total Undistributed Operating Expense** | $ 37,500.00 | $ 37,500.00 | $ 37,500.00 | $ 37,500.00 | 150,000.00 | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 | 140,000.00 | $ 26,320.00 | $ 26,320.00 | $ 26,320.00 | $ 26,320.00 | $ 26,320.00 | $ 131,600.00 |
| **Gross Operating Profit** | $ (9,500.00) | $ (9,500.00) | $ (9,500.00) | $ (9,500.00) | (38,000.00) | $ (4,000.00) | $ (4,000.00) | $ (4,000.00) | $ (4,000.00) | $ (4,000.00) | (20,000.00) | $ (6,520.00) | $ (6,520.00) | $ (6,520.00) | $ (6,520.00) | $ (6,520.00) | $ (32,600.00) |
| Management Fees | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 13,000.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 16,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 16,250.00 |
| Insurance | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 12,000.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 12,000.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 12,000.00 |
| Professional Fees/Other Fees | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 12,000.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 12,000.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 12,000.00 |
| CAT Tax | | | | | | | | | | | | | | | | | |
| Capex/Reserve Payments to RSS | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 7,200.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 9,000.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 9,000.00 |
| RSS | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 36,000.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 36,000.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 36,000.00 |
| Real estate taxes | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 14,400.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 18,000.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 18,000.00 |
| SBA EIDL | 2,493.25 | 2,493.25 | 2,493.25 | 2,493.25 | 9,973.00 | 1,994.60 | 1,994.60 | 1,994.60 | 1,994.60 | 1,994.60 | 9,973.00 | 1,994.60 | 1,994.60 | 1,994.60 | 1,994.60 | 1,994.60 | 9,973.00 |
| Misc | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 15,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 15,000.00 |
| **Total Other Expense** | $ 29,143.25 | $ 29,143.25 | $ 29,143.25 | $ 29,143.25 | 116,573.00 | $ 25,644.60 | $ 25,644.60 | $ 25,644.60 | $ 25,644.60 | $ 25,644.60 | 128,223.00 | $ 25,644.60 | $ 25,644.60 | $ 25,644.60 | $ 25,644.60 | $ 25,644.60 | $128,223.00 |
| **Net Operating** | $(38,643.25) | $(38,643.25) | $(38,643.25) | $(38,643.25) | (154,573.00) | $(29,644.60) | $(29,644.60) | $(29,644.60) | $(29,644.60) | $(29,644.60) | (148,223.00) | $(32,164.60) | $(32,164.60) | $(32,164.60) | $(32,164.60) | $(32,164.60) | $(160,823.00) |
| US Trustee Fees | $   348.17 | $   348.17 | $   348.17 | $   348.17 | 1,392.69 | 272.98 | 272.98 | 272.98 | 272.98 | 272.98 | 1,364.89 | 266.26 | 266.26 | 266.26 | 266.26 | 266.26 | 1,331.29 |
| **NET after US Trustee Fees** | $ (38,991.42) | $ (38,991.42) | $ (38,991.42) | $ (38,991.42) | (155,965.69) | $ (29,917.58) | $ (29,917.58) | $ (29,917.58) | $ (29,917.58) | $ (29,917.58) | (149,587.89) | $ (32,430.86) | $ (32,430.86) | $ (32,430.86) | $ (32,430.86) | $ (32,430.86) | $162,154.29) |

# EXHIBIT B

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| IN RE: | * | CASE NO: <u>23-53043</u> |
| | * | (Chapter 11) |
| Welcome Group 2, LLC, et., al.[1] | * | |
| | * | |
| | * | (Judge Mina Nami Khorrami) |
| | * | |
| Debtor/Debtor-in-Possession. | * | (Joint Administration Proposed) |

## <u>NOTICE OF EMERGENCY MOTION BY THE DEBTORS/DEBTORS-IN-POSSESSION FOR AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION</u>

Welcome Group 2, LLC[1], Debtor and Debtor in Possession ("Debtor"), has filed a Motion for the entry of an order for an Interim Order Authorizing use of Cash Collateral and Providing Adequate Protection, a copy of which is attached hereto.

**<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the Application, then on or before **twenty-one(21) days from the date set forth in the Certificate of Service for the** Application, you must file with the Court a response explaining your position by mailing your response by regular U.S. Mail to:

### U.S. Bankruptcy Court, 170 N High St, Columbus, OH 43215

OR your attorney must file a response using the Court's ECF system.

If you mail your request and response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also send a copy of your response either by 1) the Court's ECF system or 2) regular U.S. Mail to:

### The Thomsen Law Group, LLC, Proposed Counsel for Debtors, 140 North Main Street, Suite A, Springboro, OH 45066

---

[1] The Debtors are Welcome Group 2, LLC (Case No. 23-53043), Dayton Hotels, LLC (Case No. 23-53044), and Hilliard Hotels, LLC (Case No. 23-53045).

**Office of the U.S. Trustee, 170 North High Street, Columbus, OH Suite 200, 43215**


If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Application and may enter an order granting that relief without further hearing or notice.

**PLEASE TAKE NOTICE THAT THE DEBTOR HAS FILED A MOTION FOR AN EXPEDITED HEARING TO CONSIDER CERTAIN FIRST DAY MOTIONS AND APPLICATIONS, INCLUDING THE FOREGOING.  THE DEBTOR SHALL SERVE NOTICE OF THE EXPEDITED HEARING DATE PURSUANT TO FURTHER ORDER(S) OF THIS COURT.**


Date of Service:  September 6, 2023

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Darlene E. Fierle (0081217)
Denis E. Blasius (0082617)
140 North Main Street, Suite A
Springboro, Ohio  45066
937-748-5001
937-748-5003 (Fax)
ithomsen@ihtlaw.com
dfierle@ihtlaw.com
dblasius@ihtlaw.com

*Thomsen Law Group, LLC*
*Proposed Counsel for*
*Debtors/Debtors-in-Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| IN RE: | * | CASE NO:  23-53043 |
| | * | (Chapter 11) |
| Welcome Group 2, LLC, et., al.[2] | * | |
| | * | |
| | * | (Judge Mina Nami Khorrami) |
| | * | |
| Debtor/Debtor-in-Possession. | * | (Joint Administration Proposed) |

## EMERGENCY MOTION BY THE DEBTOR/DEBTOR-IN-POSSESSION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2: (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF FINAL HEARING; AND (V) GRANTING RELATED RELIEF

The above captioned debtors and debtors-in-possession herein (collectively, the "**Debtors**"), by and through proposed counsel, and hereby respectfully moves this Court for the entry of an Interim Order Authorizing the Debtor to use cash collateral of, and to provide adequate protection to, RSS WFCM2019-C50 – OH WG2, LLC c/o Rialto Capital Advisors, LLC[3] (**the "Secured Lender"**), along with other requested relief (the "**Motion**"), pursuant to the provisions of 11 *U.S.C.* §§ 105, 361, and 363 *Federal Rules of Bankruptcy Procedure*, *Rules* 2002, 4001, 6004 and 9014 and *Local Bankruptcy Rules* 4001-1, 4001-2 and 6004-1, in substantially the form attached hereto as Exhibit "A" and a cash collateral budget (the "Budget," a copy of which is attached as Schedule 1 to Exhibit "A" hereto).

---

[2] The Debtors are Welcome Group 2, LLC (Case No. 23-53043), Dayton Hotels, LLC (Case No. 23-53044), and Hilliard Hotels, LLC (Case No. 23-53045).

[3] RSS WFCM2019-C50 – OH WG2, LLC is the successor in interest to UBS AG. RSS WFCM2019-C50 – OH WG2, LLC and UBS AG are referred to collectively herein as "Secured Lender".

**The Debtor is separately filing a motion requesting an expedited hearing on the relief requested in this filing and to reduce the deadline for objections hereto. The time in which to respond to this motion or application will be set forth in a separate Order of this Court (on the motion for expedited hearing or disposition) and shall be served as required by the Court.**

A Memorandum In Support is attached.

Respectfully Submitted

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Darlene E. Fierle (0081217)
Denis E. Blasius (0082617)
140 North Main Street, Suite A
Springboro, Ohio  45066
937-748-5001
937-748-5003 (Fax)
ithomsen@ihtlaw.com
dfierle@ihtlaw.com
dblasius@ihtlaw.com

*Thomsen Law Group, LLC*
*Proposed Counsel for*
*Debtors/Debtors-in-Possession*

## DISCLOSURE OF INFORMATION PURSUANT TO BANKRUPTCY RULE 4001(B) AND LOCAL BANKRUPTCY RULE 4001-2(B)

| Category | Summary and Location |
|---|---|
| Entities with a purported interest in cash collateral[4]<br>(Bankruptcy Rule 4001(b)(1)(B)(i)) | RSS WFCM2019-C50 – OH WG2, LLC. Purported interest in cash collateral of Debtors Hillard Hotels, LLC ("**Hilliard**"), Dayton Hotels, LLC ("**Dayton South**"), Welcome Group 2, LLC ("**Welcome**") as discussed in paragraphs 13 - 19, 22 - 25, and 29 - 32 below, and in the documents referenced therein.<br><br>Small Business Administration – Purported interest in cash collateral of Hilliard as discussed in paragraphs 20 below, and in the documents referenced therein.<br><br>Small Business Administration – Purported interest in cash collateral of Dayton South as discussed in paragraphs 26 below, and in the documents referenced therein.<br><br>Itria Funding LLC – Purported interest in cash collateral of Hilliard, Dayton South, and Welcome, as discussed in paragraphs 21, 27, and 33 below, and in the documents referenced therein.<br><br>U.S. Foods, Inc. – Purported interest in cash collateral of Dayton South, and Welcome, as discussed in paragraphs 28 and 34 below, and in the documents referenced therein. |

---

[4] Notwithstanding any statements to the contrary herein, these disclosures and the disclosures made throughout this Motion do not constitute an admission or agreement by the Debtors to the validity, priority, or enforceability of any of the alleged security interests in the Debtors' cash collateral or other assets or any admission concerning the validity, amount, or secured status of any of the associated claims. The Debtors do not waive any rights they might have to challenge any of these security interests, the related claims, or to assert any form of relief against the parties purporting to hold these claims.

| Purposes for use of cash collateral (Bankruptcy Rule 4001(b)(1)(B)(ii)) | To fund ongoing profitable operations, to preserve the going concern value of the Debtors, and to pay necessary administrative expenses of these cases and United States Trustee Fees |
|---|---|
| Material terms for use of cash collateral (Bankruptcy Rule 4001(b)(1)(B)(iii)) | Usage of cash collateral in accordance with budget attached as Schedule 1 to the Order.<br><br>Monthly Adequate Protection Payments in the amount of $36,000.00 to RSS WFCM2019-C50 – OH WG2, LLC<br><br>Scheduled Payments of interest and principal to the Small Business Administration. |
| Adequate protection package or explanation of why no adequate protection is necessary (Bankruptcy Rule 4001(b)(1)(B)(iv)) | Debtors believe Secured Lender is likely oversecured and the value of their collateral will be increased by the maintenance of the going concern value of the Debtors. As adequate protection, Secured Lender will receive periodic payments as set forth in the Budget.<br><br>Debtors will be making scheduled payments to U.S. Small Business Administration. |
| Provisions requiring highlighting under Local Bankruptcy Rule 4001-2(B) | The proposed order does not contain any such provisions. |

## MEMORANDUM

1.     On September 1, 2023, ("the Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code ("the Bankruptcy Code"). The Debtors intend to operate their businesses as a Debtor-in-Possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      No creditors' committee has yet been appointed in this case by the United States Trustee. No trustee or examiner has been appointed in the Debtor's Chapter 11 case.

3.      The Debtors filed these Chapter 11 proceedings in order to reorganize their debts and maintain their operations and employees.

4.      This Court has jurisdiction over this Motion pursuant to 28 *U.S.C.* §§157 and 1334. Venue is proper pursuant to 28 *U.S.C.* §§1408 and 1409. The subject matter of this Motion is a core proceeding pursuant to 27 U.S.C. § 157(b).

5.      The statutory predicates for the relief requested herein are Sections 105(a), 361, 363, and 364 of the Bankruptcy Code, Federal Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Bankruptcy Rules 4001-2 and 6004-1.

6.      InnViteOpco, Inc., owned solely by Abhijit (Andy) Vasani is the sole member and the manager of each of the Debtors. Each of the Debtors own a hotel located in Southwest Ohio. Debtor Welcome Group 2, LLC owns and operates the Super 8 located at 2440 National Road, Zanesville, Ohio 43701. Debtor Hillard Hotels, LLC owns and operates the Hampton Inn located at 1600 Hampton Court, Sidney, OH 45365. Debtor Dayton Hotels, LLC owns and operates the Hotel at Dayton South located at 8099 Old Yankee Road, Dayton, Ohio 45458.

7.      The factual background regarding the Debtor, including its business operations and the events leading to this Chapter 11 Case, is set forth in the *Declaration of Andy Vasani in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") filed contemporaneously herewith, which is incorporated herein by reference.

## RELIEF REQUESTED

8.      It is imperative that the Debtors obtain authority to use cash collateral in order to continue funding their necessary business expenses and to fund the costs associated with the

Page **7** of 19

administration of the Cases. The Debtors have set forth a proposed order (the "Order", a copy of which is attached hereto as the Exhibit "A") and a cash collateral budget (the "Budget", a copy of which is attached as Schedule 1 to the Order) providing for the use of Cash Collateral (as defined in the Order) on an interim basis subject to the entry of a final order for relief authorizing the terms and conditions of the Debtor's continued use of Cash Collateral.

9.      The Debtors commenced these cases with the goal of restructuring their secured and unsecured debt in such a manner that provides maximum return to the creditor constituents while maintaining operations. To accomplish this goal, however, the Debtors will require the use of cash collateral. Without the use of this cash collateral, the Debtors would be required to terminate all business operations immediately, which would, in turn, result in the loss of employees' jobs and significant diminution in the value of the Debtors hotels and assets.

## BASIS FOR RELIEF

10.      Section 363(a) of the Bankruptcy Code provides that for purposes of that section:

> "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Section 552(b)(2) of the title in turn provides that, if a debtor and a creditor entered into a security agreement before the commencement of a case that extends to the amounts paid as fees, charges, accounts, or other payments for the use or occupancy of rooms

and other public facilities in hotels, motels, or other lodging properties, then such security

interest extends to such rents and such fees, except to the extent that the court, after notice and a

hearing and based on the equities of the case, orders otherwise. Thus, the portion of the Debtors'

revenue that relates to room rentals would constitute cash collateral if a secured creditor had a

properly perfected security interest in it.

11.    Under Section 363(c)(2) of the Bankruptcy Code, the Debtor may not use cash

collateral without the consent of the secured creditor or authority granted by the Court.

Bankruptcy Code Section 363(e) provides that on request of an entity that has an interest in

property to be used by a debtor, the Court shall prohibit or condition such use as necessary to

provide adequate protection of such interest.

12.    By this Motion, the Debtors request authority to use cash collateral on terms set

forth in the Order. The Debtor's use of cash collateral, including the Debtor's agreement to

provide replacement liens and other assurances as adequate protection in connection with such

use, is authorized pursuant to § 363(c) of the Bankruptcy Code. Section 363(c)(1) of the

Bankruptcy Code provides as follows: "If the business of the debtor is authorized to be operated

under section 721, 1108, 1183, 1184, 1203, 1204 or 1304 of this title and unless the court orders

otherwise, the trustee may enter into transactions, including the sale or lease of property of the

estate, in the ordinary course of business without notice or a hearing, and may use property of the

estate in the ordinary course of business without notice or a hearing." However, section 363(c)(2)

provides that the Debtor's use of cash collateral is prohibited unless "(A) each entity that has an

interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes

such use, sale, or lease in accordance with the provisions of this section."

### THE SECURED LENDER OBLIGATIONS AND CASH COLLATERAL

13.     On or about April 9, 2019, the Debtors executed and delivered to Secured Lender a Loan Agreement (the "Loan Agreement"). A true and accurate copy of the Loan Agreement is attached to the First Day Declaration as Exhibit "A" and is incorporated by reference herein.

14.     On or about April 9, 2019, Debtors executed and delivered to Secured Lender a Promissory Note in the original principal sum of $21,300,000.00 (the "Note"). A true and accurate copy of the Note is attached to the First Day Declaration as Exhibit "B" and is incorporated by reference herein. Pursuant to Schedule 1A of the Loan Agreement, $2,475,000.00 of the original principal sum of the Note was allocated to Welcome Group 2, LLC (Super 8 Zanesville), $7,800,000.00 to Hilliard Hotels, LLC (Hampton Inn), and $3,750,000.00 to Dayton Hotels, LLC (Hotel at Dayton South). In addition, $2,700,000.00 and $4,575,000.00 of the original principal sum of the Note was allocated to two additional non-debtor hotels, Elite Hospitality, LLC (Quality Inn and Suites) and Dayton Hotels 2, LLC (Best Western Plus Englewood), respectively.

15.     Secured Lender filed a Complaint in the Montgomery County Common Pleas Court against Debtors on December 28 2021, Case No. 2021 CV 05237 (the "State Court Litigation"), alleging Debtors had defaulted under the terms of the Loan Agreement. Ultimately, the appointment of a Receiver was approved by the Montgomery County Common Pleas Court. The Receiver took over operational control of all three Debtor hotels and two non-debtor affiliated hotels on August 8, 2023, almost immediately shutting down the non-debtor affiliate hotels Quality Inn and Suites in Obetz, Ohio and Best Western Plus in Englewood, Ohio. A more detailed summary of the State Court Litigation is included with the First Day Declaration.

*Hilliard Hotels, LLC Collateral*

16. The Secured Lender asserts, as security for compliance with the terms of the Loan Agreement and Note, it properly perfected its security interest in certain collateral owned by Hilliard Hotels, LLC by recording (1) a mortgage (the " Hilliard Mortgage") recorded on April 15, 2019 with the Shelby County, Ohio Recorder, instrument number 201900001739, (2) an assignment of rents (the "Hilliard Assignment of Rents") recorded on April 15, 2019 with the Shelby County, Ohio Recorder, instrument number 201900003046, and (3) by filing a UCC-1 Financing Statement on April 11, 2019 with the Ohio Secretary of State, Initial Filing Number OH00229716850 (the "Hilliard Financing Statement").

17. True and accurate copies of the Hilliard Mortgage, Hilliard Assignment of Rents, and Hilliard Financing Statement (along with related assignments) are attached to the First Day Declaration as Exhibits "C", "D", and "E" respectively, and are incorporated by reference herein.

18. Secured Lender asserts through the State Court Litigation that it holds a first priority properly perfected security interest in all real and personal property of Hilliard Hotels, LLC (the "Hilliard Collateral") based on the Hilliard Mortgage, Hilliard Assignment of Rents, and Hilliard Financing Statement.

19. Secured Lender asserts that the Hilliard Collateral includes but is not limited to the real estate located at 1600 Hampton Court, Sidney, OH 45365 which is valued at $10,800,000.00.

20. On or about August 19, 2020, Debtor Hilliard Hotels, LLC executed and delivered to the U.S. Small Business Administration (the "SBA") a Loan Authorization and Agreement, promissory note, and security agreement, in the original principal sum of $150,000.00, which were subsequently amended on January 18, 2022 in the original amended principal sum $2,000,000.00 (collectively, the "Hilliard SBA Note"). The SBA asserts, as

security for compliance with the terms of the Hilliard SBA Note, it properly perfected its security interest in certain collateral owned by Hilliard Hotels, LLC by filing a UCC-1 Financing Statement on August 30, 2020 with the Ohio Secretary of State, Initial Filing Number OH00245926754 (the "Hilliard SBA Financing Statement") True and accurate copies of the SBA Note and the Hilliard SBA Financing Statement are attached to the First Day Declaration as Exhibits "F" and "G" respectively, and are incorporated by reference herein.

21.     Itria Ventures, LLC may claim a secured interest in the Hilliard Collateral pursuant to a UCC filed with the Ohio Secretary of State, Filing Number OH00238253708. See Exhibit "H" to the First Day Declaration. However, Debtor asserts that any purported security interest of Itria Ventures, LLC in the Hilliard Collateral is disputed and is wholly unsecured.

*Dayton Hotels, LLC Collateral:*

22.     The Secured Lender asserts, as security for compliance with the terms of the Loan Agreement and Note, it properly perfected its security interest in certain collateral owned by Dayton Hotels, LLC by recording (1) a mortgage (the "Dayton South Mortgage") recorded on April 12, 2019 with the Montgomery County, Ohio Recorder, instrument number 2019-00018215, (2) an assignment of rents (the "Dayton South Assignment of Rents") recorded on April 12, 2019 with the Montgomery County, Ohio Recorder, instrument number 2019-00018216, and (3) by filing a UCC-1 Financing Statement on April 11, 2019 with the Ohio Secretary of State, Initial Filing Number OH00229716850 (the "Dayton South Financing Statement").

23.     True and accurate copies of the Dayton South Mortgage, Dayton South Assignment of Rents, and Dayton South Financing Statement (along with related assignments) are attached to the First Day Declaration as Exhibits "I", "J", and "K" respectively, and are incorporated by reference herein.

24.     Secured Lender asserts through the State Court Litigation that it holds a first priority properly perfected security interest in all real and personal property of Dayton Hotels, LLC (the "Dayton South Collateral") based on the Dayton South Mortgage, Dayton South Assignment of Rents, and Dayton South Financing Statement.

25.     Secured Lender asserts that the Dayton South Collateral includes but is not limited to the real estate located at 8099 Old Yankee Road, Dayton, Ohio 45458 which is valued at $2,900,000.00.

26.     On or about June 3, 2020, Debtor Dayton Hotels, LLC executed and delivered to the SBA a Loan Authorization and Agreement, promissory note, and security agreement, in the original principal sum of $150,000.00, (collectively, the "Dayton Hotels SBA Note"). The SBA asserts, as security for compliance with the terms of the Dayton Hotels SBA Note, it properly perfected its security interest in certain collateral owned by Dayton Hotels, LLC by filing a UCC-1 Financing Statement on June 12, 2020 with the Ohio Secretary of State, Initial Filing Number OH00241571888 (the "Dayton Hotels SBA Financing Statement") True and accurate copies of the Dayton Hotels SBA Note and the Dayton Hotels SBA Financing Statement are attached to the First Day Declaration as Exhibits "L" and "M" respectively, and are incorporated by reference herein.

27.     Itria Ventures, LLC may claim a secured interest in the Dayton South Collateral pursuant to a UCC filed with the Ohio Secretary of State, Filing Number OH00238253697. See Exhibit "N" to the First Day Declaration. However, Debtor asserts that any purported security interest of Itria Ventures, LLC in the Dayton South Collateral is disputed and is wholly unsecured.

28.     U.S. Foods, Inc. may claim a secured interest in the Dayton South Collateral pursuant to its filing of a UCC-1 Financing Statement on August 25, 2020 with the Ohio

Secretary of State, Initial Filing Number OH00245783437. See Exhibit "O" to the First Day Declaration.

### *Welcome Group 2, LLC Collateral*

29.     The Secured Lender asserts, as security for compliance with the terms of the Loan Agreement and Note, it properly perfected its security interest in certain collateral owned by Welcome Group 2, LLC by recording (1) a mortgage (the " Welcome Mortgage") recorded on April 19, 2019 with the Muskingum County, Ohio Recorder, instrument Number 201900003418, Book 2843, Page 863, (2) an assignment of rents (the "Welcome Assignment of Rents") recorded on April 19, 2019 with the Muskingum County, Ohio Recorder, instrument number 201900003419, Book 2843, Page 895, and (3) by filing a UCC-1 Financing Statement on April 11, 2019 with the Ohio Secretary of State, Initial Filing Number OH00229716850 (the "Welcome Financing Statement").

30.     True and accurate copies of the Welcome Mortgage, Welcome Assignment of Rents, and Welcome Financing Statement (along with related assignments) are attached to the First Day Declaration as Exhibits "P", "Q", and "R" respectively, and are incorporated by reference herein.

31.     Secured Lender asserts through the State Court Litigation that it holds a first priority properly perfected security interest in all real and personal property of Welcome Group 2, LLC (the "Welcome Collateral") based on the Welcome Mortgage, Welcome Assignment of Rents, and Welcome Financing Statement.

32.     Secured Lender asserts that the Welcome Collateral includes but is not limited to the real estate located at 2440 National Road, Zanesville, Ohio 43701 which is valued at $3,500,000.00.

33.     Itria Ventures, LLC may claim a secured interest in the Welcome Collateral pursuant to a UCC filed with the Ohio Secretary of State, Filing Numbers OH00235121483 and OH00238251502. See Exhibit "S" to the First Day Declaration However, Debtor asserts that any purported security interest of Itria Ventures, LLC in the Welcome Collateral is disputed and is wholly unsecured.

34.     U.S. Foods, Inc. may claim a secured interest in the Welcome Collateral pursuant to its filing of a UCC-1 Financing Statement on August 25, 2020 with the Ohio Secretary of State, Initial Filing Number OH00245783760. See Exhibit "T" to the First Day Declaration.

## USE OF CASH COLLATERAL SHOULD BE APPROVED

35.     Debtors desires to use cash collateral as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral") and provide adequate protection to the Secured Lender.

36.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways (*see*, *e.g.*, 11 *U.S.C.* § 361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *See In re 495 Cent. Park Ave. Corp*., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization"); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

37.     As of the Petition Date, the Secured Lender has not consented to the interim use of Cash Collateral; however, the Debtor needs immediate authority to use the Cash Collateral to fund ongoing business operations. The Debtor intends to provide sufficient adequate protection

to Secured Lender as more fully set forth herein and in the proposed Order to permit the use of the Cash Collateral.

38.     Adequate protection is provided to Secured Lender by the Debtor by using Cash Collateral only in accordance with the Budget (except as otherwise authorized by this Court) and by making the payments to Secured Lender and the U.S. Small Business Administration as stated therein. Adequate protection is also provided by the re-granting of the pre-petition security interests to Secured Lender (not to extend beyond the collateral that secured the Loan from Secured Lender pre-petition).

39.     In the event the Debtors are not permitted to use Cash Collateral, they will be unable to pay their necessary obligations to conduct business operations and their employees will be severely impacted. In short, the failure to utilize Cash Collateral will result in immediate and irreparable harm to the Debtors, and the Debtors state that interim relief pursuant to Bankruptcy Rule 4001 is appropriate.

40.     The Budget details the necessary expenditures for the continued operations and viability of the Debtors, including the proposed adequate protection payments.

41.     The Debtor prepared the budget using historical data and the current state of affairs, given a receiver currently occupies and operates the Debtor hotels. The Debtors assert that the Budget is feasible and the expenses stated therein are reasonable and necessary for the continued operation and viability of the Debtors. As indicated on the Budget, it is based upon the best information available to the Debtors and the Debtors' principal and is subject to further review and the state of the facilities when the Debtors regain operational control of the hotels.

42.     Therefore, the Debtor requests that the Court consider entry of the Proposed Interim Order (a) authorizing the Debtor from and after the entry of the Proposed Interim Order until a final hearing to utilize the Cash Collateral as provided in the Proposed Interim Order, and

Page **16** of **19**

(b) granting the adequate protection as provided in the Proposed Interim Order. This relief will enable the Debtor to operate its business in the ordinary course and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending a final hearing.

The Interim Order Should be Entered.

43.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Section 363 of the Bankruptcy Code and to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.

Waiver of Requirement to File Memorandum of Law.

44.     The Debtor states that this Motion does not present any novel issues of law requiring briefing and that the Motion adequately describes the issues presented. Therefore, the Debtor requests that the Court waive the requirement pursuant to Local Rule 9013-1(a) for a memorandum in support of this Motion.

Compliance with Local Rule 4001-2(b)

45.     Pursuant to *Local Rule* 4001-2(b), Debtor states that none of the terms included in the Proposed Order contain any of the provisions set forth in *Local Rule* 4001-2(b)(2)(A) through (b)(2)(Q).

No Prior Request.

46.     No previous request for the relief sought herein has been made to this Court or any other court.

Page **17** of **19**

Notice

47.    Notice of this Motion will be provided to: (i) the Columbus office of the United

States Trustee for Region 9: Southern District of Ohio; (ii) RSS WFCM2019-C50 – OH WG2,

LLC, by and through counsel to its special service Rialto Capital, Advisors, LLC; (iii) the United

States Small Business Administration; (iv) U.S. Attorney Columbus, (v) U.S. Attorney General,

(vi) U.S. Foods, Inc. (vii) Itria Ventures, LLC, and (viii) each of the Debtors' largest 20

unsecured creditors. In light of the nature of the relief requested herein, the Debtor submits that

no other or further notice is required. **Because of the irreparable harm that threatens the**

**Debtors if the relief requested herein is not timely granted, the Debtors have requested that**

**an expedited hearing be held to consider this and the other First Day Motions and to**

**approve the notice provided herein.** A copy of the Motion will be served upon the parties

noted above via telecopier, e-mail, ECF transmission, or overnight delivery, delivery prepaid, as

soon as practicable after the entry of an order approving the form and manner of the First Day

Notice or as otherwise ordered by the Court.


**Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider**

**certain First Day Motions and Applications, including the foregoing.  The Debtor shall**

**serve notice of the expedited hearing date pursuant to further order(s) of this Court.**


For the reasons set forth herein and in the Proposed Order attached hereto as Exhibit "A",

Debtor respectfully requests the authority of this Court to authorize it to use cash collateral and

to enter into the Proposed Order attached hereto as Exhibit "A".

Page **18** of **19**

Respectfully Submitted:

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Darlene E. Fierle (0081217)
Denis E. Blasius (0082617)
140 North Main Street, Suite A
Springboro, Ohio  45066
937-748-5001
937-748-5003 (Fax)
ithomsen@ihtlaw.com

*Thomsen Law Group, LLC*
*Proposed Counsel for*
*Debtors/Debtors-in-Possession*

**EXHIBIT "A"**
**PROPOSED INTERIM ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| IN RE: | * | CASE NO: <u>23-53043</u> |
| | * | (Chapter 11) |
| Welcome Group 2, LLC[1], et., al. | * | |
| | * | |
| | * | (Judge Mina Nami Khorrami) |
| Debtor/Debtor-in-Possession. | * | (Joint Administration Proposed) |
| | * | |

**INTERIM ORDER PERMTTING USAGE OF CASH COLLATERAL**
**AND PROVDING ADEQUATE PROTECTION TO PURPORTED**
**SECURED CREDITORS FOR THIS USAGE AND SCHEDULING A**
<u>**FINAL HEARING ON USAGE OF CASH COLLATERAL (Re: Docket No. 10)**</u>

This matter comes before the Court on an expedited basis on the for the entry of an Interim

Order Authorizing the Debtor to use cash collateral, along with other requested relief (the "**Motion**")[2]

(Doc. ___), pursuant to the provisions of 11 *U.S.C.* §§ 105, 361, and 363 *Federal Rules of Bankruptcy*

*Procedure*, *Rules* 2002, 4001, 6004 and 9014 and *Local Bankruptcy Rules* 4001-1, 4001-2 and 6004-

1, through and including the date of a final hearing on this Motion (the "**Final Hearing**") and

---

[1] The Debtors are Welcome Group 2, LLC (Case No. 23-53043), Dayton Hotels, LLC (Case No. 23-53044), and Hilliard
Hotels, LLC (Case No. 23-53045).
[2] Capitalized terms used, but not defined in this Order, shall have the meanings ascribed to them in the Motion.

providing purported secured creditors adequate protection for this usage during the period between the entry of this motion and the Final Hearing.  Having considered the Motion, the Rule 4001 Notice, the First Day Declaration of Abhijit Vasani (Doc. ___), and the testimony and presentation at the hearing held on September __, 2023 (the "**Interim Hearing**"), this Court finds on an interim basis for the purposes of entering this Interim Order that:

A.      It has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference entered by the United States District Court for the Southern District of Ohio.

B.      This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.      Venue of this case and this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Adequate notice of the Motion has been given under the circumstances.  Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and Bankruptcy Code Section 102(1), as required by Bankruptcy Code Section 363(b) and Local Rules 4001-2(d) and 9013-3 has been given to the following parties in interest: the U.S. Trustee, RSS WFCM2019-C50 – OH WG2, LLC c/o Rialto Capital Advisors, LLC ("Secured Lender") and its counsel, Itria Ventures ("**Itria**") and its counsel, the United States Small Business Association ("**SBA**"), U.S. Foods, and the creditors holding the twenty (20) largest unsecured claims against the Debtors' estate (collectively, the "**Interim Noticed Parties**").

E.      That authorizing the usage of Cash Collateral (as defined herein) on an interim basis is necessary to avoid the immediate and irreparable harm that would occur if the Debtors have to shut down operations in satisfaction of Local Rule 4001-2(c).

F.      The relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors, and other parties in interest.

G.      The use of Cash Collateral (as defined in section 363(a) of the Bankruptcy Code) is granted, only upon the terms and conditions contained in this Interim Order.

H.      It is in the best interests of the Debtors' creditors and estate that they be allowed to continue their operations under the terms and conditions set forth herein.

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      <u>Motion Granted</u>.   The Motion is granted on an interim basis as set forth herein.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtors are hereby authorized to use Cash Collateral, in accordance with the terms and conditions of this Interim Order.

3.      <u>Final Hearing</u>.  A final hearing (the "**Final Hearing**") on the Motion shall be held on October __, 2023 at ____:____ _.m. (prevailing Eastern Time).  Any objections or responses to the entry of the proposed Final Order shall be filed with the Court no later than _____, 2023 at 4:00 p.m. (prevailing Eastern Time).  If no timely objections or responses to entry of the Final Order are filed, the Court may enter the Final Order without conducting the Final Hearing or providing further notice.

4.      <u>Budget Limitations on Cash Collateral Usage</u>.  All Cash Collateral must be used strictly in accordance with the terms of the budget attached hereto as Schedule 1 (the "Budget").  The Debtors shall not, without the prior written consent of the Secured Lender or authorization by this Court, use Cash Collateral with respect to any one "Operating Expense" line item in the Budget in excess of 10% of the amount identified in the Budget for that line item for the period running through November 24, 2023 (the "Budget Period") (other than current monthly utilities, which may not be in excess of 15% of the amount identified in the Budget), provided, however, that the Debtors shall be permitted to pay additional expenses of amounts in excess of over 10% above the "Operating Expense" line item to the extent such overage is paid out net income over and above the amount shown in the Budget.  Any

3

unused amounts for one week may be rolled to the next week.  Any extension or other modification of the Budget shall be subject to either the prior written approval of the Secured Lender or the approval of the Court.

5.    <u>Payments to Secured Lender</u>.  On or before the fifth day of each month in the Budget Period, Debtors shall make a payment to Secured Lender of $36,000.00. The adequate protection payment provided for herein is contained in the Budget.

6.    As adequate protection for any diminution in the value of the Small Business Administration's asserted interests in the Cash Collateral, the Debtors shall also make scheduled non-accelerated payments of principal and interest to the Small Business Administration.

7.    All such payments identified in paragraphs 5 and 6 shall be subject to disgorgement if the applicable creditor is later found to have no interest in the Cash Collateral.  Nothing in this order shall prejudice any party in interest's rights with respect to how such payments impact the allowed claim of any such entity asserting an interest in the Cash Collateral.

8.    <u>Adequate Protection of Secured Creditors' Interests</u>.  As adequate protection for any post-petition diminution in value of the interests of Secured Lender and the SBA's pre-petition assets of the Debtors (the "Pre-Petition Collateral"), including without limitation for any diminution in value resulting from the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, or the imposition of the automatic stay, each such entity is hereby granted an administrative expense claim against the Debtor's estates for the full amount of such diminution, in accordance with Section 507(b) of the Bankruptcy Code, with priority over every other claim allowable under Section 507(a) of the Bankruptcy Code (the "**Adequate Protection Claim**" or collectively, "**Adequate Protection Claims**").  In order to secure each of their asserted Adequate Protection Claim, Secured Lender and SBA are each hereby granted a lien, mortgage and security interest (the "**Replacement Lien**") in and upon (a) the Pre-Petition Collateral and all post-petition proceeds of the Pre-Petition Collateral, and

4

(b) the post-petition assets acquired or generated by the Debtors' estates (the "**Post-Petition Collateral**" and, together with the Pre-Petition Collateral, the "**Collateral**") and all proceeds thereof to the same extent, validity and priority as its pre-petition security interest.  Nothing in this Order shall be deemed to grant any party a security interest in the Debtors' claims under Chapter 5 of the Bankruptcy Code or the proceeds thereof.  The rights of all parties in interest to argue the relative priority of these parties' asserted liens in the Cash Collateral is preserved under this Interim Order.

9.      The Replacement Liens granted under this Interim Order do not substitute for or in any way alter the properly perfected and enforceable liens which any party might have in the Debtors' assets.

10.      <u>Maintenance; Insurance; Governmental Charges</u>.  Except as otherwise provided herein, the Debtors shall maintain the Collateral and ensure the proper maintenance of the Collateral, including, as necessary, through incurrence and payment of expenses set forth in the Budget.  The Debtors, at their expense, shall (a) continue to at all times keep the Collateral fully insured against all loss, peril and hazard and, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Collateral that are not part of the escrowed payments.

11.      <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Bankruptcy Code Section 362 are hereby modified to permit (a) the Debtors to grant the Replacement Liens as adequate protection to the entities being granted adequate protection, and (b) the Debtors to create, and the entities being provided adequate protection to perfect, any and all liens, mortgagees and security interests granted to it hereunder; *provided, however,* that the entities being provided adequate protection shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Interim Order or take any other action to perfect such liens, mortgages and security interests, and such liens, mortgages and security interests are hereby deemed perfected; *provided however,* that if an entity being provided

5

adequate protection shall, in its sole discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens and security interests, the Debtors shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order.

12.      <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute a "**Termination Event**" under this Interim Order:

(a)      the case is either dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(b)      a trustee or examiner with expanded powers is appointed in the Case;

(c)      any of the Debtors cease operations of their businesses or takes any material action for the purpose of effecting such cessation without the prior written consent of Secured Lender or filing a Motion with this Court seeking to do so;

(d)      this Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of Secured Lender hereunder or shall materially and adversely affect the priority of any or all of Secured Lender's claims, liens or security interests and which is not acceptable to the Secured Lender;

(e)      the Court shall not have entered a further interim order on the Motion or a Final Order on or before the last day of the Budget Period covered by this Interim Order;

(f)      the Debtors' failure to comply with or perform the terms and provisions of this Interim Order or any prior interim order entered in regard to the Motion, in strict adherence to the time period set forth herein, including, without limitation, making the payments required by this Interim Order and/or using Cash Collateral other than in accordance with the provisions of the Budget and this Interim Order;

6

(g)      any superpriority claim or lien equal or superior in priority to that granted to the parties being provided Adequate Protection pursuant to this Interim Order or permitted hereunder shall be granted;

(h)      the automatic stay of Bankruptcy Code Section 362 is lifted so as to allow a party other than the Secured Lender to proceed against any material asset of the Debtors, the materiality of which is to be determined by this Court.

13.      <u>Remedies Upon Termination</u>.  Upon the occurrence of a Termination Event, the giving by a secured party of written notice of such event, and after the expiration of ten days after receipt of notice for the Debtor(s) to cure such event and Debtor(s)' failure to do so:

(a)      any and all Adequate Protection Claims shall be immediately due and payable, and the Debtors' authorization to use Cash Collateral shall terminate; and

(b)      the Debtors shall immediately segregate all Cash Collateral, and shall not be permitted to use Cash Collateral unless Secured Lender  shall have given its prior written consent or the Court shall have entered an order, after a hearing upon notice to the Secured Lender, authorizing such use.

14.      <u>Reporting Obligations</u>.  The Debtors:

(a)      shall deliver monthly to Secured Lender and the United States Trustee, no later than the close of business five (5) days after the end of the month, a breakdown by line-item, in the same format as the Budget, of the Debtors' actual cash receipts and disbursements for the immediately preceding month, which shows such actual receipts and disbursements for the applicable period compared to such receipts and disbursements for the applicable period as projected in the Budget, such report to be certified by an officer of of the Debtors to be accurate to the best of his/her knowledge, information and belief;

(b)       shall deliver to Secured Lender and the United States Trustee or file with the Court, no later than twenty (20) calendar days after the end of each month a copy of the Debtors' monthly operating reports for such month;

(c)       shall deliver to Secured Lender and the United States Trustee, within five (5) calendar days of the Debtors' receipt thereof, copies of all audited financial statements or other similar financial statements which reflect the Debtors' assets and liabilities and results of operations; and

15.      <u>Books and Records</u>.  The Debtors are directed to keep their books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' businesses.

16.      <u>Payment of Professional Fees and Insiders</u>.  Notwithstanding any other provision of this Interim Order, payment of professional fees (including for any attorney, accountant or property manager) from Cash Collateral pursuant to the Budget or otherwise shall be subject to the Bankruptcy fee application process.  Retained professionals shall make such applications in accordance with any separate order establishing procedures for monthly and interim compensation and reimbursement of expenses for professionals, or as otherwise required by applicable law or rules.  Payment of compensation to professionals, including to the Debtors' counsel, may be made only to the extent so ordered by the Court upon ruling on a fee application.

17.      <u>Additional Documents</u>.  The Debtors are hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of their obligations hereunder.

18.      <u>Immediate Effect</u>.  As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

19.      <u>Survival After Confirmation, Conversion or Dismissal</u>.  The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered

8

confirming any plan of reorganization or which may be entered converting this Case from Chapter 11 to Chapter 7 of the Bankruptcy Code; *provided, further,* that the terms and provisions of this Interim Order, as well as the liens, mortgages and security interests granted thereunder, shall continue in these Cases or any successor cases and such liens, mortgages and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Interim Order.

20.     No Limitation of Modification of Order.  Nothing in this Interim Order shall limit the rights of any secured party to seek modification of this Interim Order.

21.     No Prejudice of Rights Against Third Parties.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that the Secured Lender may have against parties other than the Debtors.

22.     Effect on Third Parties.   The provisions of this Interim Order shall be binding on all third parties provided that any other secured party may be provided adequate protection for its interests in the Pre-Petition Collateral, if any, which adequate protection shall not contradict or otherwise interfere with the terms of the Interim Order.

23.     Service of this Order.  Within three (3) business days after the entry of this Interim Order, the Debtors shall serve a copy on those parties as ordered by the court.

24.     Binding Effect.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the secured creditors, the Debtors, the Debtors' estates and their respective successors and assigns (including any trustee appointed as a representative of the Debtors' estates or in any successor case).

25.     Controlling Effect.  To the extent that any provision of this Interim Order conflicts with any provision of any of governing documents for any pre-petition secured indebtedness of the Debtors, which shall remain in full force and effect, this Interim Order is deemed to control and shall supersede the conflicting provision(s).

26.     In the event this Interim Order is extended, all of the provisions hereof shall remain in full force and effect, except to the extent otherwise provided for in an order of the Court extending this Interim Order.

**IT IS SO ORDERED**.


Copies to:

Default List Plus Top 20.

Tami Hart Kirby
Porter Wright Morris & Arthur LLP
One S. Main St., Suite 1600
Dayton, Ohio 45402

Itria Ventures, LLC
1 Penn Plaza, Suite 4530
New York, New York 10019

Andrew Pincus
Seidman & Pincus LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07064

Noah Schottenstein
DLA Piper LLP (US)
1900 N. Pearl St, Suite 2200
Dallas, Texas 75201-2482

Small Business Administration
Santa Ana Loan Liquidation Center,
200 W Santa Ana Blvd., Ste 740,
Santa Ana, California 92701

# SCHEDULE 1

**Super 8/Welcome Group 2Cash Collateral Budget**
**Dayton South Cash Collateral Budget**
**Hampton Inn/Hilliard  Cash Collateral Budget**
Projected Income Statement and Usage of Cash Collateral

| Weekly Period | 9/4/2023 | 9/11/2023 | 9/18/2023 | 9/25/2023 | 10/2/2023 | 10/9/2023 | 10/16/2023 | 10/23/2023 | 10/30/2023 | 11/6/2023 | 11/13/2023 | 11/20/2023 | 11/27/2023 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Numbers starting 9/4/23 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Summary** | | | | | | | | | | | | | | |
| **Operating Revenue** | | | | | | | | | | | | | | |
| Room Department | 84,500.00 | 84,500.00 | 84,500.00 | 84,500.00 | 85,000.00 | 86,000.00 | 85,000.00 | 85,000.00 | 85,000.00 | 74,000.00 | 74,000.00 | 74,000.00 | 74,000.00 | $1,060,000.00 |
| **Total Operating Revenue** | $84,500.00 | $84,500.00 | $84,500.00 | $84,500.00 | $85,000.00 | $86,000.00 | $85,000.00 | $85,000.00 | $85,000.00 | $74,000.00 | $74,000.00 | $74,000.00 | $74,000.00 | $1,060,000.00 |
| **Operational Expenses** | | | | | | | | | | | | | | |
| Room Department and Room Supplies | 5,500.00 | 5,500.00 | 5,500.00 | 5,500.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | $69,650.00 |
| Payroll/Contract Wages | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 14,750.00 | 14,750.00 | 14,750.00 | 14,750.00 | $207,500.00 |
| **Total Departmental Expenses** | $ 22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,750.00 | $22,750.00 | $22,750.00 | $22,750.00 | $22,750.00 | $18,850.00 | $18,850.00 | $18,850.00 | $18,850.00 | $ 277,150.00 |
| Room Department Income | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,250.00 | 63,250.00 | 62,250.00 | 62,250.00 | 62,250.00 | 55,150.00 | 55,150.00 | 55,150.00 | 55,150.00 | 782,850.00 |
| Miscellaneous Income | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 1,950.00 | 1,950.00 | 1,950.00 | 1,950.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | $28,300.00 |
| **Total Departmental Income** | $ 64,750.00 | $64,750.00 | $64,750.00 | $64,750.00 | $64,200.00 | $65,200.00 | $64,200.00 | $64,200.00 | $64,550.00 | $57,450.00 | $57,450.00 | $57,450.00 | $57,450.00 | $ 811,150.00 |
| **Undistributed Operating Expense** | | | | | | | | | | | | | | |
| Administrative & General | 4,750.00 | 4,750.00 | 4,750.00 | 4,750.00 | 5,750.00 | 5,750.00 | 5,750.00 | 5,750.00 | 4,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | $61,750.00 |
| Information & Telecom System | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | 2,150.00 | $27,950.00 |
| Franchise Fees/Sales & Marketing | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 14,500.00 | 14,500.00 | 14,500.00 | 14,500.00 | 12,500.00 | 9,000.00 | 9,000.00 | 8,000.00 | 8,000.00 | $158,500.00 |
| Property Operations & Maintenance | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 5,850.00 | 5,850.00 | 5,850.00 | 4,350.00 | 3,850.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | $64,750.00 |
| Utilities | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 6,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 6,500.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | $85,500.00 |
| **Total Undistributed Operating Expense** | $ 33,400.00 | $33,400.00 | $33,400.00 | $33,400.00 | $34,250.00 | $35,250.00 | $35,250.00 | $33,750.00 | $29,750.00 | $24,650.00 | $24,650.00 | $23,650.00 | $23,650.00 | $ 398,450.00 |
| **Gross Operating Profit** | $ 31,350.00 | $31,350.00 | $31,350.00 | $31,350.00 | $29,950.00 | $29,950.00 | $28,950.00 | $30,450.00 | $34,800.00 | $32,800.00 | $32,800.00 | $33,800.00 | $33,800.00 | $ 412,700.00 |
| Management Fees | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | $42,250.00 |
| Insurance | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | $26,400.00 |
| Professional Fees/Other Fees | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | $39,000.00 |
| CAT Tax | - | - | - | - | 1,500.00 | 1,500.00 | - | - | - | - | - | - | - | $3,000.00 |
| Capex/Reserve | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | $3,900.00 |
| Payments to RSS | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | $117,000.00 |
| Real Estate taxes | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 2,750.00 | 2,750.00 | 2,750.00 | 5,750.00 | 7,500.00 | 4,000.00 | 2,500.00 | 2,500.00 | 2,500.00 | $47,000.00 |
| SBA EIDL | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | 3,131.00 | $40,703.00 |
| Misc | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 4,200.00 | 4,200.00 | 4,650.00 | 3,200.00 | 5,700.00 | 8,500.00 | 10,000.00 | 11,000.00 | 11,000.00 | $87,650.00 |
| **Total Other  Expense** | $ 30,881.00 | $30,881.00 | $30,881.00 | $30,881.00 | $29,531.00 | $29,531.00 | $28,481.00 | $30,031.00 | $34,281.00 | $32,381.00 | $32,381.00 | $33,381.00 | $33,381.00 | $ 406,903.00 |
| **Net Operating Income** | $ 469.00 | $ 469.00 | $ 469.00 | $ 469.00 | $ 419.00 | $ 419.00 | $ 469.00 | $ 419.00 | $ 519.00 | $ 419.00 | $ 419.00 | $ 419.00 | $ 419.00 | $ 5,797.00 |
| US Trustee Fees | $ 345.12 | $ 345.12 | $ 345.12 | $ 345.12 | $ 346.12 | $ 350.12 | $ 345.92 | $ 346.12 | $ 347.12 | $ 303.52 | $ 303.52 | $ 303.52 | $ 303.52 | $4,330.01 |
| **NET after US Trustee Fees** | $ 123.88 | $ 123.88 | $ 123.88 | $ 123.88 | $ 72.88 | $ 68.88 | $ 123.08 | $ 72.88 | $ 171.88 | $ 115.48 | $ 115.48 | $ 115.48 | $ 115.48 | $1,466.99 |