IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| In re<br><br>WELCOME GROUP 2, LLC, *et al.*[1]<br><br>               Debtors. | Case No.: 2:23-bk-53043<br><br>Chapter 11<br><br>Judge Mina Nami Khorrami<br><br>Jointly Administered |

**BRIEF OF HILTON FRANCHISE HOLDING LLC REGARDING APPLICATION OF
THE HYPOTHETICAL TEST TO THE ASSUMPTION OF FRANCHISE AGREEMENTS**

Hilton Franchise Holding LLC ("Hilton Franchise") respectfully submits this brief in

accordance with the Scheduling Order (*defined below*).

**BACKGROUND**

On February 28, 2024, Hilton Franchise filed the *Motion of Hilton Franchise Holding LLC*

*for Relief from the Automatic Stay* (ECF No. 166, the "Stay Relief Motion"). In the Stay Relief

Motion, Hilton Franchise seeks authority to terminate that certain Franchise Agreement[2] between

Hilton Franchise and Hilliard Hotels, LLC ("Hilliard" or the "Debtor"). Among other things, Hilton

Franchise contends that "cause" exists to modify the automatic stay because Section 365(c)(1) of

the Bankruptcy Code and applicable non-bankruptcy law, preclude Hilliard from assuming or

assigning the Franchise Agreement without the consent of Hilton Franchise. In the Stay Relief

Motion, Hilton Franchise argued that this Court should follow the "majority view" – that the plain

language of 11 U.S.C. §365(c)(1) requires application of a "hypothetical test," under which a

debtor-in-possession may not assume an executory contract over objection if applicable law bars the

---

[1] This case is jointly administered with *In re Dayton Hotels LLC*, Case Number 2:23-bk-53044 and *In re Hilliard Hotels, LLC*, Case Number 2:23-bk-53045.

[2] All terms not herein defined shall be given the meaning ascribed to them in the Stay Relief Motion.

assignment of the contract.

On March 25, 2024, Hilliard filed the *Objection of Hilliard Hotels, LLC to Hilton Franchise Holding LLC's Motion for Relief from Automatic Stay* (ECF No. 191, the "Objection"). In its objection, Hilliard asked the Court to reject the "hypothetical test" relative to 11 U.S.C. §365(c)(1) in favor of an "actual test" employed by some courts.

On March 27, 2024, the Court held a preliminary hearing on the Stay Relief Motion and Objection (the "Preliminary Hearing"). At the Preliminary Hearing, Hilton Franchise and Hilliard discussed that whether application of the "actual" or "hypothetical" test should be determined before other issues raised in the Stay Relief Motion are decided.[3] The parties agreed to a scheduling order that was entered on April 22, 2024 (the "Scheduling Order"; ECF No. 208). The Scheduling Order directs each party to file briefs on whether the "actual" or "hypothetical" test applies to the assumption of the Franchise Agreement.

For the following reasons, as well as those presented in the Stay Relief Motion, Hilton Franchise argues that the "hypothetical test" applies and therefore bars the assumption of the Franchise Agreement.  Accordingly, "cause" exists to terminate the automatic stay.

## LEGAL ARGUMENT

**I. Principles of Statutory Construction Prohibit Assumption of the Franchise Agreement Without the Consent of Hilton Franchise**

Section 365(c) is crystal clear:

The trustee may not assume **_or_** assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

---

[3] Hilton Franchise contends that if the "hypothetical test" is applied to 11 U.S.C. §365(c)(1), the Stay Relief Motion must be granted, and the balance of the arguments raised by Hilton become moot.  Alternatively, if the Court applies the "actual test", other arguments raised in the Stay Relief Motion would need to be decided.

317707614.1

> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment…

11 U.S.C. § 365(c) (emphasis added).

The statute unequivocally states that Hilliard "may not assume **or** assign" the Franchise Agreement without consent of Hilton Franchise if "applicable law" prohibits such assignment. As noted in the Stay Relief Motion, Hilton Franchise does not consent to assumption or assignment of the Franchise Agreement, and applicable law prohibits assignment. *See* Stay Relief Motion, p. 8; *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir.), cert. denied, 528 U.S. 924 (1999)

Courts should resist reading words or elements into a statute that do not appear on its face. *Bates v. United States*, 522 U.S. 23, 29 (1997). The Court should not regard ordinary principles of English prose as irrelevant to a construction of Congressional enactments. *Flora v. United States*, 362 U.S. 145, 150 (1960). When the words of a statute are unambiguous, then the first canon of statutory construction is the last and the judicial inquiry must be complete. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

Clarity of statutory language in a Bankruptcy Code provision obviates the need for any inquiry into legislative history. *Patterson v. Shumate*, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992).

The province of a court is to apply the law exactly as it is written - unless doing so results in a patently absurd result – and not to indulge any temptations to infer congressional intent, or to rescue Congress from its own drafting errors, either real or perceived. *Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004) (rejecting an effort to read words into a statute), citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000).

317707614.1

The word "or," . . . is almost always disjunctive, that is, the words it connects are to "be given separate meanings." *United States v. Woods*, 571 U.S. 31, 45, 134 S. Ct. 557, 567, 187 L. Ed. 2d 472 (2013). Section 365(c) clearly states that Hilliard "may not assume **or** assign" the Franchise Agreement without consent of Hilton Franchise if applicable law prohibits such assignment. There is no authority for a court to replace "or" with "and" in 11 U.S.C. § 365(c), as proposed by courts favoring the "actual test" (discussed below), such that assumption of an executory contract would only be prohibited if coupled with a request to assign the agreement.

The Sixth Circuit has followed the Supreme Court's directive and held that any analysis of the meaning of a statute must begin with the text of the statute itself. *Vander Boegh v. Energysolutions, Inc.*, 772 F.3d 1056, 1059 (6th Cir. 2014) ("A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself."). If the language of the statute is plain, the sole function of the court is to enforce it according to its terms so long as the disposition required by the text is not absurd. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1106 (6th Cir. 2010) (quoting *Lamie v. U.S. Trustee*). The Sixth Circuit acknowledges that "statutory construction is a holistic endeavor." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993); *In re Tudor*, 342 B.R. 540 (Bankr. S.D. Ohio 2005) (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*). Only after a court applies the principles of statutory construction and concludes the statute is ambiguous, may the court consult legislative history. *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020). However, a statute is only ambiguous if the words are susceptible to more than one reasonable interpretation or accepted meaning. *Id.* at 256. Section 365(c) of the Bankruptcy Code is not ambiguous.

## II. The Majority of Courts of Appeal Apply the Hypothetical Test.

4

317707614.1

In *In re West Elecs., Inc.*, 852 F.2d 79, 82-83 (3d Cir. 1988), the Third Circuit Court of Appeals held that section 365(c) requires the court to conduct a hypothetical test to determine if the trustee may assume or assign a contract. *Id.* The court found that whether the debtor is proposing to assume or assign the contract is irrelevant because the inquiry under the plain language of section 365(c) is not whether applicable law would preclude an assignment from the debtor, but whether it forecloses an assignment by the debtor to a third party. *Id.* at 83. Accordingly, section 365(c) operates to preclude assumption by the debtor, even though the debtor did not seek to assign the contract. *Id. West* and its progeny formulated the so-called "hypothetical test" that has been adopted by the majority of the Circuit Courts of Appeal that have considered the issue. *See In re Catapult Ent., Inc.*, 165 F.3d 747 (9th Cir. 1999); *In re Sunterra Corp.*, 361 F.3d 257 (4th Cir. 2004); and *In re James Cable Partners, LP*, 27 F.3d 534 (11th Cir. 1994).

In contrast, the First Circuit Court of Appeals has adopted the so-called "actual test," holding that a debtor in possession may assume a contract provided it has no intention of assigning the contract to a third party. *See Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 493 (1st Cir. 1997). The actual test is fatally flawed as it ignores the plain wording of Section 365(c) and imposes terms (assumption coupled with assignment) that are not in the statute. As explained by the Fourth Circuit Court of Appeals, while the actual test may be appealing from a bankruptcy policy standpoint, courts "cannot adopt [the "actual test"] without trespassing on a function reserved for the legislative branch." *Sunterra*, 361 F.3d at 269.

Commentators agree that the hypothetical test is the preferred test:

The Hypothetical Test affords the licensor a measure of control and predictability over the possession of their intellectual property licenses. General intellectual property policy favors allowing a licensor to control the assignability of its licenses. In patent law, for example, this approach aids the patent holder in

5

exploiting the patent and thus "rewards" the licensor for its innovation. In an Actual Test jurisdiction licensors are unable to sufficiently predict the identity of the licensee after bankruptcy. The licensee likely, for all practicable purposes, emerges from bankruptcy with different goals and a new purpose; the licensee may even reorganize under vastly different management.

Alex Tucker, *Bankruptcy's (Mis)treatment of Intellectual Property: Why 365(n) Is Not Enough, Part II*, 24 Intell. Prop. & Tech. L.J. 20, 26 (2012). *See also*, 3 Collier on Bankruptcy P 365.04 (16th 2024) (Under Section 365(c) of the Bankruptcy Code an executory contract that cannot be assigned under applicable non-bankruptcy law may not be assumed and assigned by a trustee or a debtor-in-possession without permission of the contracting party.)

The Sixth Circuit Court of Appeals has not ruled on the applicability of the "hypothetical" or the "actual" test relative to 11 U.S.C. §365(c). Hilton Franchise requests that this Court adopted the well reasoned majority view and apply the hypothetical test to the Stay Relief Motion.

**III.    The Non-Binding Cases Cited by Hilliard Are Distinguishable and/or Are Not Persuasive.**

Hilliard argues that the "'hypothetical test' has been rejected by cases in the Sixth Circuit." *See* Opposition at p. 8. In support of this argument, Hilliard cites to one unpublished opinion, *In re Ohio Skill Games*, 2010 WL 2710522 (Bankr. N.D. Ohio 2010), one opinion from the Northern District of Mississippi, which is in the Fifth Circuit, *In re Jacobsen*, 465 B.R. 102 (Bankr. N.D. Miss. 2011), and one case from the Southern District of Ohio, *In Re Cardinal Industries, Inc.*, 116 B.R. 964 (Bankr. S.D. Ohio 1990). None of the cases cited by Hilliard are binding on this Court.

First, unpublished cases are not binding precedent. *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002) ("It is well-established law in this circuit that unpublished cases are not binding precedent"); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 205 n.3 (6th Cir. 2004). While

317707614.1

unpublished opinions may provide helpful guidance, they carry no precedential weight. *Bell,* 308

F.3d at 611. This well-established rule ensures that litigants and courts rely only on authoritative

published decisions in determining applicable law. Thus, Hilliard's reliance on the unpublished

opinion in *In re Ohio Skill Games* is not binding.

Second, district or bankruptcy court opinions are not binding on other district or

bankruptcy courts. *United States v. Article of Drug Consisting of 203 Paper Bags*, 818 F.2d 569,

572 (7th Cir. 1987) (single district court decision has little precedential effect and is not binding

on other district judges in the same district); *Starbuck v. City and Cnty. of San Francisco*, 556

F.2d 450, 457 n.13 (9th Cir. 1977) (same); *Farley v. Farley*, 481 F.2d 1009 (3rd Cir. 1973) (even

a three judge decision of the district court is not necessarily binding on any other district court);

and *EEOC v. Pan Am. World Airways*, 576 F. Supp. 1530, 1535 (S.D.N.Y. 1984). Thus,

Hilliard's reliance on *In Re Cardinal Industries, Inc.* and *In re Jacobsen* is not binding.

Hilliard spends much of its brief arguing that *In re Jacobsen*, a Mississippi case, is

"virtually identical to the issue before the Court – assumption of a franchise agreement."

Objection at p. 8. Yet, Hilliard completely ignores a case from within the Sixth Circuit-- *In re*

*Kazi Foods of Mich., Inc.*, 473 B.R. 887, 890 (Bankr. E.D. Mich. 2011)—which is directly on

point in that the case determines the issue of whether a franchise agreement can be assumed

pursuant to Section 365(c)(1).  In *In re Kazi Foods of Mich., Inc.*, the bankruptcy court held that

franchise agreements to operate KFC fast food restaurants could not be assumed or assigned by

the debtors without the franchisor's consent under section 365(c)(1). In that case, the franchisor

argued that the debtor could not assume or assign the franchise agreements because they

contained non-exclusive licenses to use trademarks that were protected by federal trademark law

(i.e., the Lanham Act). The court agreed, reasoning that "in the words of § 365(c)(1)(A), such

317707614.1

trademark law is an 'applicable law' that 'excuses a party, other than the debtor, to such contract [i.e., KFC] . . . from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession.'" *Id*. at 889. Accordingly, the court concluded that "[u]nder § 365(c)(1), Debtors may not assume any of their franchise agreements with KFC without KFC's consent." *Id*. at 890.

Like the Circuit Courts that apply the "actual test", *In re Ohio Skill Games, In re Jacobsen*, and *In Re Cardinal Industries, Inc.,* ignore the plain wording of Section 365(c) and rely on terms (assumption of the executory contract coupled with assignment) that are not in the statute. As these decisions ignore the plain language of 11 U.S.C. § 365(c), Hilton Franchise urges this Court to decline to adopt the "actual test".

### IV.    The Lanham Act Is the "Applicable Law" for Purposes of Section 365(c)

For purpose of section 365(c), "applicable law" includes "intellectual property law governing the assignment of licenses." *In re Travelot Co.*, 286 B.R. 447, 454 (Bankr. S.D. Ga. 2002) (*citing Catapult Ent.*, 165 F.3d at 750 and *In re Golden Books Family Ent., Inc.*, 269 B.R. 300, 308-10 (Bankr. D. Del. 2001)). In this case, federal trademark law governs Hilton Franchise's rights in its trademarks and service marks.

The Lanham Trademark Act, codified in Chapter 22 of Title 15 of the United States Code, provides that a registrant of a mark registered in the Patent and Trademark Office is entitled to nationwide trademark protection. 15 U.S.C. §§ 1072, 1111; *Travelot*, 286 B.R. at 455. Section 45 of the Lanham Act, defines a trademark as "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

317707614.1

The Lanham Act prevents the unauthorized use or transfer of a federally registered trademark. For example, 15 U.S.C. § 1116 authorizes a registrant to sue and obtain injunctive relief against the non-consensual use of a trademark. Also, 15 U.S.C. § 1114 provides that "any person who shall, without the consent of the registrant . . . use in commerce any reproduction . . . of a registered mark in connection with the sale . . . of any goods shall be liable in a civil action by the registrant for the remedies . . . provided." Moreover, 15 U.S.C. § 1125 provides that "any person who . . . uses in commerce any . . . word . . . symbol . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person" shall be liable in a civil action.

In the case of *In re Wellington Vision, Inc.*, 364 B.R. 129 (S.D. Fla 2007) the United States District Court for the Southern District of Florida reaffirmed that the Lanham Act is properly deemed "applicable non-bankruptcy law" that would prevent assumption or assignment without the explicit consent of the non-debtor contracting party.

Because the Lanham Act prevents the unauthorized use of, as well as the unauthorized assumption and/or assignment of trademarks and other intellectual property rights, it prevents the assumption and/or assignment of the Franchise Agreement without the consent of Hilton Franchise.

## CONCLUSION

Hilton Franchise respectfully submits that the Court should apply the "hypothetical" test to this proceeding and grant the Stay Relief Motion.

Dated: May 13, 2024                    Respectfully submitted,


                                       /S/ *Daniel M. Eliades*
                                       _____
                                       Daniel M. Eliades, Esq. *(admitted pro hac vice)*

9

Caitlin C. Conklin, Esq. *(admitted pro hac vice)*
K&L Gates LLP
One Newark Center, 10th Floor
1085 Raymond Boulevard
Newark, New Jersey 07102
Telephone: (973) 848-4018
Facsimile:  (973) 848-4001
Email:  daniel.eliades@klgates.com
Email:  caitlin.conklin@klgates.com

317707614.1