# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | * | Case No. 2:23-bk-53043 |
| WELCOME GROUP 2, LLC, *et al.*,[1] | * | Chapter 11 |
| | * | Judge Nina Nami Khorrami |
| Debtors. | * | |
| | * | Jointly Administered |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEBTOR'S OBJECTION TO THE HILTON FRANCHISE HOLDING LLC MOTION FOR RELIEF FROM AUTOMATIC STAY REGARDING HILLIARD HOTELS, LLC (DOC 166)**

Comes Now Debtor Hilliard Hotels, LLC ("Debtor") by and through its undersigned counsel, and pursuant to the *Scheduling Order Upon the Motion of Hilton Franchise Holding LLC for Relief from the Automatic Stay [Doc. 166]* (*Doc.* 208) and hereby submits its Supplemental Memorandum "on the issue of whether the actual or hypothetical test applies to the assumption of the Franchise Agreement in this proceeding".

Respectfully submitted,

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Denis E. Blasius (0082617)
Darlene E. Fierle (0081217)
140 North Main Street, Suite A
Springboro, Ohio 45066
937-748-5001
937-404-6630 (Fax)
ithomsen@ihtlaw.com

---

[1] The Debtors and the last four digits of their federal tax identification numbers are as follows: Welcome Group 2, LLC (6795), Hilliard Hotels, LLC (6063), and Dayton Hotels, LLC (1123). The Debtors' headquarters are located at 5955 E. Dublin Granville Road, New Albany, Ohio 45305.

dblasius@ihtlaw.com
dfierle@ihtlaw.com
*Thomsen Law Group, LLC*
*Case Attorney and Counsel for*
*Debtors/Debtors-in-Possession*

### SUPPLEMENTAL MEMORANDUM

**A.   STATEMENT OF THE POSITION OF THE CASE AND OF THE PARTIES**

1. On or about June 30, 2017, Debtor entered into a Franchise Agreement with Movant Hilton Franchise Holding LLC ("Movant"). A true and accurate copy of the Franchise Agreement is appended to Movant's *Motion for Relief from Automatic Stay Regarding Hilliard Hotels, LLC* (*Doc*. 166) as Exhibit "A" and incorporated by reference herein.

2. Debtor has and continues to operate the hotel commonly known as the Hampton Inn – Sidney under the aforesaid Franchise Agreement with Movant, as an "Affiliate of Hilton Worldwide" (See, *Franchise Agreement*, *Introduction*).

3. There is no question, as will be more fully set forth in the Disclosure Statement and Plan of Reorganization to be filed in these Chapter 11 proceedings, that the Debtor wishes to assume the Franchise Agreement with Movant and continue to operate the Hampton Inn – Sidney under the Hilton "flag", which is a valuable asset and an integral part of the reorganization for this Debtor and the affiliated Debtors in these Chapter 11 proceedings.

4. There is no dispute between Debtor and Movant that the Franchise Agreement is an executory contract, and its implementation and assumption are governed by 11 U.S.C. §365.

5. The Debtor has no intention, in its Plan or otherwise, of assigning or attempting to assign the Franchise Agreement.

6. Movant argues that because the Lanham Act prohibits the non-consensual *assignment* of a trademark or other intellectual property rights, such as the Hilton name and logo, Debtor cannot *assume* the Franchise Agreement without the consent of Movant.

7. Even assuming *arguendo* that Movant's interpretation of the prohibitions in the Lanham Act apply herein, that in and of itself does not prohibit the assumption of the Franchise Agreement by the Debtor.

8. Movant argues that under 11 U.S.C. §365(c)(1), *regardless of Debtor's intention not to assign the Franchise Agreement*, that the Debtor cannot *assume* the Franchise Agreement without the consent of Movant per the "hypothetical test" courts have set forth under the interpretation of the terms and effect of 11 U.S.C. §365(c)(1).

9. This Court should reject the "hypothetical test" and alternatively favor an "actual test" to decide that 11 U.S.C. §365(c)(1) does not prohibit assumption of the Franchise Agreement regardless of the lack of consent on the part of the Movant.

**B.** **LAW AND ARGUMENT**

10. 11 U.S.C. §365(c)(1) states:

"(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if--

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment;"

11. Debtor would direct the Court to *Collier on Bankruptcy,* 16th Edition, Vol. 3, Para. 365.01[1][d], 365-63 to 365-64 (2013) (Alan N. Resnick and Henry J. Sommer):

**"[d] Assumption by Debtor in Possession: Actual v. Hypothetical Test**

A debtor in possession has the rights, and is subject to the limitations, of a trustee. Section 365(c) provides that "the trustee [which includes a debtor in possession] may not assume or assign any executory contract or unexpired lease of the debtor, . . . if . . . applicable law excuses a party, other than the debtor, . . . from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession . . .." Read strictly, section 365(c) would bar not only a third-party trustee, but the debtor in possession itself, from assuming such an executory contract or lease. Under such a strict reading of this provision, if a party would be excused from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, then the trustee, including a debtor in possession, may not assume the contract or lease even if the debtor, as debtor in possession, would be performing under the contract or lease.

This was the approach (the "hypothetical test") taken by the court in *In re West Electronics, Inc.* In that case, the court barred the debtor in possession from assuming a nonassignable government contract even though the debtor in possession did not wish to assign the contract, but intended to perform the contract itself.

**This approach is troubling, as it may prevent a debtor in possession from being able to reorganize under circumstances that do not adversely affect the other party to the contract**. The other party contracted for the debtor's

performance and the debtor (in its capacity as debtor in possession) proposes to perform the contract after assumption. Of course, the other party is now dealing with a debtor who is in bankruptcy, but this is the same problem faced by other contracting parties. **Section 365(e) prevents a party to a contract from terminating the contract merely because the debtor has commenced a bankruptcy case, and section 365(c) should not be interpreted to provide a means around that provision or its underlying policy**. The Court of Appeals for the First Circuit has reached this conclusion (the "actual test"). The Court of Appeals for the Fifth Circuit has reached the same conclusion, although with stronger language and reasoning, as have numerous other courts." (Footnotes omitted). (Emphasis added).

12. As indicated in the article above, the actual test finds support in several Courts of Appeal, which includes the First Circuit in *Summit Investment and Development Corporation v. Lenoux* 69 F.3d 608, 612-613 (1st cir. 1995), to wit:

> "Second, because the statutory language is ambiguous and open to more than one plausible interpretation, we look to its legislative history, *see O'Neill,* 729 F. 2d at 36:
>
> [T]his section *will require the courts to be sensitive* to the rights of the non-debtor party [viz., Summit] to executory contracts and unexpired leases. If the trustee is to assume a contract or a lease, the court will have to ensure that the trustee's performance under the contract or lease gives the other contracting party the *full benefit of his bargain.* S.Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), *reprinted in* 1980 U.S.C.C.A.N. 5787, 5845 (emphasis added).
>
> This passage pointedly suggests that Congress did not envision the abstract analysis proposed by Summit, but contemplated a case-by-case inquiry into the *actual* consequences—to the nondebtor party—of permitting these executory contracts to be performed by the debtor party following the institution of bankruptcy proceedings. In other words, where a debtor or debtor in possession bears the burden of performance under an executory contract, the nondebtor party to whom performance is due must make an individualized showing that it would not receive the "full benefit of [its] bargain" were an entity to be substituted for the debtor from whom performance is due."

13. *In re Footstar, Inc.*, 323 B.R. 566, 570 (Bankr. S.D. NY 2005)[2] is instructive as it

---

[2] See Also *In re Aerobox Composite, Inc.*, 373 B.R. 125 (Bankr. D.N.M. 2007).

sets forth a clear picture of the reason "actual test", in the context of a Chapter 11 proceeding, is the only logical method to interpret 11 U.S.C. §365(c)(1), to wit:

> "The courts applying the "actual test" reject an interpretation based on a "hypothetical" (but not real) intent to assign the contract in contravention of the balance of the statutory provision. These courts emphasize the fact that a literal interpretation of the disjunctive "or" is utterly incongruent with the objectives of the Bankruptcy Code and would lead to the anomalous result that a debtor in possession would be deprived of its valuable but unassignable contract solely by reason of having sought the protection of the Bankruptcy Court, even though it did not intend to assign it."

14. *In re Hartec Enterprises,* 117 B.R. 865, 871-872 (Bankr. WD TX 1990) provides the direct and exact analysis which shows the inconsistencies and impracticality in the hypothetical test:

> "The hypothetical test posited by *West* does not fulfill the purposes of the non-assignment statutes it seeks to enforce, creates inherent inconsistencies in the language of both Section 365(c)(1) and other sections of the Code, and fails to adequately account for the 1984 and 1986 amendments to Section 365(c)(1)(A). Under the *West* test, a debtor in possession will always be denied authority to assume an executory contract with an objecting non-debtor party in the face of a governing non-assignment statute like 41 U.S.C. § 15. That result is not consistent with 41 U.S.C. § 15 and the authorities construing that statute. *See Thompson v. Commissioner of Internal Revenue,* 205 F.2d 73, 77 (3rd Cir.1953) (purpose of that statute is to avoid forcing the Government to deal with wholly *new entities* and to prevent trafficking in government contracts).
> 
> The hypothetical test also violates a basic rule of statutory construction that a court should give effect to every word in a statute. *See Knutsen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343, 1348 (10th Cir.1987). If the directive of Section 365(c)(1) is to prohibit assumption whenever applicable law excuses performance relative to *any* entity other than the debtor, why add the words "or debtor in possession?" The *West* test renders this phrase surplusage.
> 
> The *West* test also subverts a basic bankruptcy policy that abhors the operation of so-called "ipso facto" clauses. These are clauses which trigger a default, forfeiture or termination upon the happenstance of bankruptcy. They are rendered inoperative by other subsections of Section

365. *See* 11 U.S.C. §§ 365(b)(2), (e)(1). *West Electronics'* interpretation of Section 365(c)(1) would permit legislatures to enact laws having the impact of "ipso facto" clauses, undermining these prohibitions. In fact, the United States in this motion argues for precisely that result, urging that, under *West Electronics,* all government contracts are essentially terminated as a matter of law absent the consent of the United States. That reading is entirely inconsistent with the spirit of the Code. *See* H.Rep. 595, 95th Cong., 1st Sess. 347–48 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787; *see also Matter of Nat'l Shoes,* 20 B.R. 55, 58 (Bankr.S.D.N.Y.1982)."

15. Finally, this Court need look no further than its own Court for which test to apply, as the actual test was adopted and applied in *In re Cardinal Industries,* 116 B.R. 964, 981-982 (Bankr. S.D. OH E.D. 1990) as stated therein by Judge Sellers:

"And it is a balancing of the estate's right to determine whether to assume or reject its executory contracts against the rights of the nondebtor parties to those executory contracts that is at the heart of 11 U.S.C. § 365(c) and (e)(2). If there is a material change in the identity of the person rendering the performance under the contract, the identity of that person is an essential element of the contract, and the contract is nonassumable under applicable nonbankruptcy law, then the estate cannot assume the contract. The reason for that result is that assumption other than by agreement may result in prejudicial harm to the nondebtor party. Where the Trustee's assumption, as the representative of the estate, would not change the essential identity of the entity performing the services under the contract, the exception is not effective. In that situation the nondebtor party is not prejudiced, nor is his essential bargain affected by the assumption. **The Chapter 11 filing, therefore, should not provide a fortuitous event which excuses the nondebtor party from further performance if that performance is beneficial to the estate and if the estate can otherwise meet the tests for assumption**. **Certainly the nondebtor party should not be free to unilaterally terminate the estate's rights prior to its determination whether the contract will be assumed or rejected.** The analysis would be different if an actual assignment to a separate third party were proposed or contemplated.

Section 365(e)(2), which is an exception to the *ipso facto* invalidation provided by § 365(e) generally, is meant to reflect the same philosophy. If the contract is neither assumable nor assignable under § 365(c), invalidating the *ipso facto* clause serves no purpose." (Emphasis added).

**C.   CONCLUSION**

16.   The actual test, versus the hypothetical test, is the most commonsense approach to a Chapter 11 proceeding. Allowing a non-debtor party to a contract to terminate such contract, for no other reason that it does not consent to assignment, is counterintuitive to the primary purpose of Chapter 11 – to rehabilitate and reorganize the Debtor and preserve those assets beneficial to a successful reorganization.  The actual test, which has already been previously adopted in this Court, is the proper test and must be adopted for these Chapter 11 proceedings.

Respectfully submitted,

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)
Denis E. Blasius (0082617)
Darlene E. Fierle (0081217)
140 North Main Street, Suite A
Springboro, Ohio 45066
937-748-5001
937-404-6630 (Fax)
ithomsen@ihtlaw.com
dblasius@ihtlaw.com
dfierle@ihtlaw.com
*Thomsen Law Group, LLC*
*Case Attorney and Counsel for*
*Debtors/Debtors-in-Possession*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 13, 2024, a copy of the foregoing was served on all registered ECF participants, electronically through the court's ECF System at the e-mail address registered with the court.

/s/ Ira H. Thomsen
Ira H. Thomsen (0023965)