IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>WELCOME GROUP 2, LLC, *et al.*[1]<br><br>Debtors. | Case No.: 2:23-bk-53043<br><br>Chapter 11<br><br>Judge Mina Nami Khorrami<br><br>Jointly Administered |

**MOTION FOR THE ENTRY OF AN ORDER TO COMPEL DEBTOR TO ASSUME OR REJECT THE FRANCHISE AGREEMENT**

Hilton Franchise Holding LLC ("Hilton"), by and through its undersigned counsel, files this motion for the entry of an order compelling Hilliard Hotels, LLC ("Hilliard" or the "Debtor") to move to assume or reject its Franchise Agreement (defined below) with Hilton within a time period to be specified by this Court (the "Motion"). The grounds for the Motion are set forth herein in the Memorandum of Points and Authorities below.

Dated: February 7, 2025

                                            Respectfully submitted,

                                            **K&L GATES LLP**

                                            */s/ David S. Catuogno*
                                            Daniel M. Eliades (admitted *pro hac vice*)
                                            David S. Catuogno (admitted *pro hac vice*)
                                            One Newark Center, 10th Floor
                                            1085 Raymond Boulevard
                                            Newark, New Jersey 07102
                                            Tel: 973-848-4018
                                            Email: daniel.eliades@klgates.com
                                            Email: david.catuogno@klgates.com

---

[1] This case is jointly administered with In re Dayton Hotels LLC, Case Number 2:23-bk-53044 and In re Hilliard Hotels, LLC, Case Number 2:23-bk-53045.

322438153.1

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR THE ENTRY OF AN ORDER TO COMPEL DEBTOR TO ASSUME OR REJECT THE FRANCHISE AGREEMENT

## I. FACTUAL BACKGROUND[2]

**A.** **Hilton Franchise Holding LLC.**

1. Hilton's affiliate, Hilton International Holding LLC ("HIH") owns the service marks Hampton by Hilton® as well as various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof.

2. These marks, together with all other business names, copyrights, designs, distinguishing characteristics, domain names, emblems, insignia, logos, slogans, service marks, symbols, trademarks, trade dress and trade names (whether registered or unregistered) used in the system (as defined in the applicable license or franchise agreement) are hereinafter collectively referred to as the "Hilton® Marks". HIH has granted Hilton the right in the United States to license the use of the Hilton® Marks in connection with the franchising of hotels.

3. Hilton has developed a system for the promotion and assistance of independently owned and/or operated guest lodging facilities designed to enable such facilities to compete effectively in the hospitality market (which system is hereinafter referred to as the "Hilton System").

4. The Hilton System includes, but is not limited to, common use and promotion of certain Hilton Marks, copyrights, trade secrets, centralized advertising programs, referral programs and centralized support functions such as a nationwide computer reservation system. Hilton, from time to time, revises and updates the Hilton System.

---

[2] Unless otherwise noted, factual support for this Motion is presented in the Certification of Shruti Buckley and the exhibits thereto, filed in this proceeding on February 28, 2024 at ECF No. 166-1 (the "Buckley Cert.").

2

322438153.1

5.  Hilton and HIH or their predecessors have continuously used each of the Hilton® Marks since the date of their registration and those service marks are in full force and effect pursuant to 15 U.S.C. § 1065. Hilton has given notice to the public of the registration of the Hilton® Marks as provided in 15 U.S.C. § 1111, and Hilton uses or has used the Hilton® Marks as abbreviations of its brand name.

6.  Many hotels operating under the Hilton® Marks are franchised hotels that are independently owned and operated by third-party franchisees. Hilton allows its franchisees, pursuant to individual license or franchise agreements, to operate their guest-lodging facilities utilizing the Hilton® Marks and System (as defined in the applicable license or franchise agreement).

7.  Through the Hilton System, Hilton markets, promotes and provides services to its franchisees throughout the United States. To identify the origin of their services, Hilton allows its franchisees to utilize the Hilton® Marks and to otherwise associate their facilities' services with the Hilton® Marks and System.

**B.    The Franchise Agreement.**

8.  On June 30, 2017, Hilliard and Hilton entered into a Franchise Agreement (the "Franchise Agreement") relating to the operation of a Hampton Inn by Hilton® hotel located at 1600 Hampton Court Sidney, Ohio 45365 (the "Facility"). A copy of the Franchise Agreement is attached at **Exhibit "A"** to the Buckley Cert. (ECF No. 166-2).

9.  Pursuant to Section 8 of the Franchise Agreement, Hilliard is required to pay Hilton "Monthly Fees", including royalties, system assessment fees, taxes and other charges ("Franchise Fees"). Franchise Agreement at Section 8.1. The Franchise Fees are payable on or before the fifteenth (15th) day of each month. Id. at Section 8.2.2. Under Section 14 of the Franchise Agreement, non-payment of these fees is an event of default. Id. at Section 14.1.1.

3

10. When entering into the Franchise Agreement, Hilton informed Hilliard that certain renovations to the Facility were necessary for it to meet Hilton System requirements. Accordingly, Hilliard agreed to a property improvement plan dated December 15, 2016, which is incorporated into the Franchise Agreement (the "PIP"). *See* at Exhibit "A" to the Buckley Cert. (Addendum to the Franchise Agreement) (ECF No. 166-2). The PIP contains distinct phases, and all work pursuant to the PIP was required to be completed by March 2023. *Id.* Failure to complete the PIP by the relevant dates set forth in the addendum to the Franchise Agreement is an event of default under the Franchise Agreement. *See id.* at Section 14.

C. **The Debtor's Bankruptcy Filing.**

11. On September 1, 2023, Hilliard filed a voluntary chapter 11 bankruptcy proceeding with this Court. Debtor has continued to operate post-petition as a debtor-in-possession.

12. At the time of the bankruptcy filing, Hilliard was indebted to Hilton in the amount of at least $133,699.99 in Franchise Fees under the Franchise Agreement (the "Pre-Petition Indebtedness"). As noted above, Hilliard's failure to pay the Pre-Petition Indebtedness is an event of default under the Franchise Agreement. *See* Franchise Agreement at Section 14.1.1.

13. On October 31, 2023, Hilton filed a proof of claim herein asserting a claim in the amount of the Pre-Petition Indebtedness, which claim was designated by the Clerk as Claim No. 6-1 on the Claims Register (the "Hilton POC"). No objection has been filed regarding the Hilton POC.

14. Hilliard did not timely complete the required PIP and has been out of compliance with the PIP for over twenty-two (22) months since March of 2023. Hilliard's failure to complete the PIP by the required benchmark dates is a separate event of default under the Franchise Agreement. *See id.* at Section 14.

15. During the seventeen months that this bankruptcy case has been pending, Debtor has not moved to assume the Franchise Agreement (and cure its defaults thereunder[3]) or reject the Franchise Agreement.

**D.      Hilton's Stay Relief Motion.**

16. On February 28, 2024, Hilton filed a motion for relief from the automatic stay to terminate the Franchise Agreement due to, among other things, Hilliard's alleged incurable default relative to its failure to meet its obligations under the PIP (Docket No. 166) (the "Stay Relief Motion"). In response, the Debtor filed its *Objection of Hilliard Hotels, LLC to Hilton Franchise Holding LLC's Motion for Relief from Automatic Stay* (ECF No. 191).

17. After a preliminary hearing held on March 27, 2024, the Court determined to bifurcate the Stay Relief Motion to first decide whether the Debtor' ability to assume the Franchise Agreement was prohibited as a matter of law under 11 USC § 365 in the absence of Hilton's specific consent by application of the "hypothetical test."

18. On July 10, 2024, the Court entered an opinion and order applying the "actual test" and determining that Hilton's declination to consent to assumption was not in and of itself sufficient to preclude assumption (the "Opinion and Order") (ECF No. 249). Accordingly, the Stay Relief Motion was denied only to the extent it was based on the theory that assumption was precluded as a matter of law. The Court ruled that the automatic stay would remain in effect pending a final hearing on all remaining matters related to the Stay Relief Motion.

19. The remaining issues to be determined on the pending Stay Relief Motion include, *inter alia*, whether Hilton is adequately protected and whether the Franchise Agreement is assumable by

---

[3] Nothing contained herein is or is intended to waive or modify Hilton's position that Hilliard's failure to make mandatory repairs and improvements to the Facility as and when required under the Franchise Agreement is an incurable default barring assumption of the Franchise Agreement.

the Debtor due to the existence of alleged incurable defaults thereunder. Hilton and the Debtor are presently engaging in discovery pending the final hearing on the Stay Relief Motion. A continued pre-trial conference is scheduled for February 12, 2025.

20. If the Stay Relief Motion is granted prior to the time that this Motion may be granted, this Motion will become moot.

E. **The Debtor's Reorganization Efforts.**

21. Hilliard has not moved to assume or reject the Franchise Agreement, nor has it filed a proposed plan of reorganization addressing the assumption or rejection of the Franchise Agreement.

22. On September 19, 2024, the jointly administered debtors, Welcome Group 2, LLC, Dayton Hotels LLC, and Hilliard, filed a motion for a fourth extension of its exclusivity period for the filing of a plan of reorganization. (the "4th Exclusivity Extension Motion") [ECF No. 279]. That motion was opposed by secured creditor RSS WFCM2019-C50 – OH WG2, LLC (the "Lender") [ECF No. 299] on various grounds including that the Debtor seeks an extension of exclusivity for a period beyond what is allowed by the Bankruptcy Code, and because the Debtor has made absolutely no progress towards formulating a plan that will be accepted by its creditors. The Court has scheduled a hearing on the 4th Exclusivity Motion for January 16, 2025. On January 23, 2025, the Court entered an Agreed Order (ECF No. 343) extending the Debtors' exclusivity period until March 1, 2025.

## II. LEGAL ARGUMENT

A. **A Deadline Should be Set for Assumption or Rejection of the Franchise Agreements.**

23. The Bankruptcy Code allows a debtor, subject to court approval, to assume or reject any "executory contract" to which it is a party under 11 U.S.C. §365(a), or to assume and assign an executory contract per the requirements of 11 U.S.C. §365(f).

24. The Franchise Agreement is an executory contract. A contract is executory if the parties' obligations under the contract "are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Pacific Express, Inc., 780 F.2d 1482, 1487 (9th Cir. 1986) (*citing* Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Min. L. Rev. 439, 460 (1973)). *See also* Enterprise Energy Corp. v. U.S. (In re: Columbia Gas Sys., Inc.), 50 F.3d 233 (3d Cir.1995) (adopting Countryman definition). Most franchise or license agreements are considered executory contracts because of the ongoing material obligations of the franchisor and franchisee there under. *See, e.g.*, In re Roving Corp., 6 B.R. 661 (Bankr. W.D. Tenn. 1980) (Burger King franchise agreement is executory contract); In re Gunter Hotel Assoc., 96 B.R. 686 (Bankr. W.D. Tex. 1988).

25. In this case, the Franchise Agreement clearly constitutes an "executory contract" within the meaning of Section 365 of the Bankruptcy Code as there is ongoing performance required of the parties thereto and the failure of which would constitute a material breach. Moreover, in the Opinion and Order, the Court noted that "the Parties do not dispute …that the Franchise Agreement is an executory contract." *See* Opinion and Order, page 13.

26. Bankruptcy Code section 365(d)(2) provides, in relevant part, as follows:

> In a case under Chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract. . . of the debtor at any time before the confirmation of the plan, **but the court, on request of any party to such contract or lease, may order the trustee to determine**

> **within a specified period of time whether to assume or reject such contract or lease.**

11 U.S.C. § 365(d)(2) (emphasis added).

27. This Court has discretion to determine what constitutes reasonable time to assume or reject an executory contract in light of the broad purposes of the Bankruptcy Code. *See* In re Enron, Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002); In re Teligent, Inc., 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001); In re Rebel Rents, Inc., 291 B.R. 520, 530 (Bankr. C.D. Cal. 2003). While it is the policy of the Bankruptcy Code to grant the debtor breathing space upon the filing of a bankruptcy petition, "the breathing space afforded to the debtor for the assumption or rejection of executory contracts is not without limits." In re Enron, Corp., 279 B.R. at 702.[4]

28. In exercising their discretion to compel a debtor to assume or reject an executory contract, courts have considered certain relevant factors which may include the damage that the non-debtor will suffer that surpasses the compensation available under the Bankruptcy Code; the importance of the contract to the business and reorganization of the debtor; the sufficiency of the time the debtor had to evaluate its financial situation and the potential value of its assets; and whether exclusivity has been terminated. *See* In re Teligent, Inc., 268 B.R. at 738; Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105-06 (2d Cir. 1982).[5]

---

[4] What constitutes a reasonable period of time is left to the discretion of the bankruptcy court in light of the circumstances of the case. In re Wallace, Inc., 122 B.R. 222, 234 (Bankr. D.N.J. 1990); In re Dunes Casino Hotel, 63 B.R. 939, 949 (D.N.J.1986). In determining what constitutes a reasonable period of time, a court should consider: the nature of the interests at stake, the balance of the hurt to the litigants, the safeguards afforded those litigants and whether the action to be taken is so in derogation of Congress' scheme that the Court may be said to be arbitrary. Wallace, 122 B.R. at 234-35; Dunes Casino, 63 B.R. at 949.

[5] Generally, if the non-debtor party to an executory contract seeks relief under § 365(d)(2), the court will set a reasonable time within which the debtor must assume or reject the executory contract. In determining what constitutes a reasonable time within which a debtor should assume or reject a contract, the court considers a number of factors, including: (1) the nature of the interests at stake; (2) the balance of the hurt to the litigants; (3) the good to be achieved; (4) the safeguards afforded those litigants; and (5) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary. In re Dunes Casino Hotel, 63 B.R. at 949. In determining a reasonable time for a debtor to be compelled to assume a contract under §365(d)(2), courts have considered any of the following twelve (12) factors: (1) the nature of the interests at stake; (2) the balance of hurt to the litigants; (3) the good to be

29. The Debtor cannot fairly ask Hilton to perform under the Franchise Agreement indefinitely considering the sizable pre-petition economic default and the long-term failure of Hilliard to comply with its PIP obligations under the Franchise Agreement.

30. Hilliard's right to operate the Facility as a Hampton Inn by Hilton® branded property is conditioned on its compliance with the provisions of the Franchise Agreement, which include not only its payment obligations, but also its continuous compliance with Hampton Inn brand standards which are designed to create a cohesive and uniform experience for guests across the system portfolio. The failure of a system unit to maintain brand standards has a negative impact on the entire brand and the public's perception thereof. In this case, Hilliard has failed to comply with brand standards by failing fully and timely to complete the mandatory repairs and improvements to the Facility as required under the Franchise Agreement. The Debtor has been delinquent in the completion of its contractual repairs and improvement obligations for nearly two years – with no end in sight.

31. The Debtor has been operating outside of required brand standards for a prolonged period of time, to the detriment of the Hampton Inn by Hilton® brand. The Debtor has availed itself of the benefits of the Hampton Inn by Hilton® brand without proposing to address its monetary and non-monetary defaults under the Franchise Agreement as required under Section 365 of the Bankruptcy Code. Accordingly, Hilton requests that the Court establish a reasonable deadline for the Debtor to move to either assume or reject the Franchise Agreement.

---

achieved; (4) the safeguards afforded to the litigants; (5) whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; (6) the debtor's failure or ability to satisfy post-petition obligations; (7) the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; (8) the importance of the contract to the debtor's business and reorganization; (9) whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan; (10) whether there is a need for judicial determination as to whether an executory contract exists; (11) whether exclusivity has been terminated; and (12) the purpose of chapter 11, to permit successful reorganization. See In re Adelphia Commc'ns Corp., 291 B.R. 283 (Bankr. S.D.N.Y 2003) (granting creditor's motion to compel assumption or rejection of an executory contract).

322438153.1

32. Where a debtor has had enough time to formulate a plan or make a decision about assumption/rejection of key executory contracts, the court should order that the debtor file a motion to assume or reject the contracts pursuant to 11 U.S.C. § 365(d)(2).  See In re Rebel Rents, Inc., 291 B.R. 520, 531 (Bankr. C.D. Cal. 2003) (where the period of exclusivity had expired, the Court issued an order compelling the debtor to assume or reject the lease within 30 days.); In re Adelphia Communications Corp., 291 B.R. 283, 300 (Bankr. S.D.N.Y. 2003) (upon weighing the equities and deciding they favored the debtor in the short term and the other party to the executory contract in the long term, the court ordered that the debtor assume or reject the executory contract within 90 days); In re Taber Farm Associates, 115 B.R. 455 (Bankr. S.D.N.Y. 1990) (held that debtor had to assume or reject contract within 120 days from date bankruptcy petition was filed).

33. The Debtor has had since September of 2023 to assume or reject the Franchise Agreement. Any argument by the Debtor that it must have an even further extension of the "breathing spell" provided by its bankruptcy filing is without merit. There is ample precedent for the proposition that a court may require a debtor to assume or reject a contract within a relatively short deadline. In re Vermont Real Estate Inv. Trust, 25 B.R. 809, 810-13 (Bankr. D.Vt. 1982) (requiring decision to be made within 9 days and if contract not assumed granting stay relief to terminate); In re Giant Mkts., Inc., 28 B.R. 335, 337 (Bankr. M.D.Pa. 1983), (allowing debtor 14 days from date of opinion to make decision to assume or reject); In re Wallace, Inc., 122 B.R. at 235 (requiring decision to be made in 15 days and, further, ordering that relief from stay be granted for cause if motion to assume or reject is not filed); In re Janesville Lodging Limited, 35 B.R. 672, 676 (Bankr. W.D. Wis. 1983) (giving debtor 20 days to move to assume or reject).

322438153.1

34. Additionally, part of what remains before the Court in the pending Stay Relief Motion is Hilton's position that the Debtor cannot assume the Franchise Agreement due to the existence of incurable defaults.[6] That being the case, if the Debtor wishes to assume the Franchise Agreement, it should be compelled to declare its intention to do so by filing a motion to assume which can then be joined with the Stay Relief Motion. The Court then, in the context of the joined motions, can evaluate whether the Debtor can meet its burden of establishing compliance with the requirements for assumption under 11 U.S.C. § 365 (b)(1); or, alternatively, that it cannot, in which case Hilton would be entitled to relief from the automatic stay to terminate the agreement. Proceeding in such fashion will promote judicial economy and provide guidance in terms of the Debtor's possibilities for potential reorganization.

35. In light of the significant size of the Debtor's pre-petition obligation to Hilton, the risk to Hilton of non-payment is significant. Likewise, Hilton's well-established reputation to the general public is at risk the longer that the Facility remains non-compliant with brand standards. The time has long passed for the Debtor to make a decision as to whether it will assume the Franchise Agreement, and it would not be equitable to force Hilton to endure the Debtor's continuing operations under the Franchise Agreement without compliance with its terms while in perpetual limbo as to the status of said agreement. Under these circumstances, a balancing of the equities requires that the Debtor be compelled to make a decision, and the Court should establish a deadline for the Debtor to file a motion seeking assumption or rejection. Hilton submits that the

---

[6] Hilton has argued that the existence of an incurable default under a lease or an executory contract is a bar to assumption of said lease or executory contract due to the movant's inability to satisfy the specific statutory requirement of 11 U.S.C. §365(b)(1)(A). *See e.g.*, In re Claremont Acquisition Corp., 113 F. 3d. 1029 (9th Cir. 1997); In re New Breed Realty Enterprises, Inc., 278 B.R. 314 (Bankr. E.D.N.Y. 2002); In re Eagle Creek Subdivision, LLC, 397 B.R. 758 (Bankr. E.D.N.C. 2008) (executory contract could not be assumed because debtor could not cure the historical and material default of failing to complete construction by contract deadline) (emphasis added).

322438153.1

entry of an order requiring the Debtor to move to assume or reject within fourteen days of a hearing on this Motion is reasonable.

### III. CONCLUSION

For the foregoing reasons, Hilton respectfully requests the entry of an Order (i) compelling the Debtor to move to assume or reject the Franchise Agreement within fourteen days of a hearing on this Motion;[7] (ii) to the extent the Debtor files a Motion to Assume, joining such motion with the pending Stay Relief Motion; and (iii) granting Hilton such other and further relief as the Court deems just and proper.

Dated: February 7, 2025

                                                Respectfully submitted,

                                                **K&L GATES LLP**

                                                */s/ David S. Catuogno*
                                                Daniel M. Eliades (admitted *pro hac vice*)
                                                David S. Catuogno (admitted *pro hac vice*)
                                                One Newark Center, 10th Floor
                                                1085 Raymond Boulevard
                                                Newark, New Jersey 07102
                                                Tel: 973-848-4018
                                                Email: daniel.eliades@klgates.com
                                                Email: david.catuogno@klgates.com

---

[7] Nothing herein shall constitute be construed as consent of Hilton to assumption or rejection of the Franchise Agreement and Hilton reserves all rights in that regard.

## NOTICE OF MOTION FOR THE ENTRY OF AN ORDER TO COMPEL DEBTOR TO ASSUME OR REJECT THE FRANCHISE AGREEMENT

Hilton Franchise Holding LLC has filed papers with the Court seeking entry of an order compelling Hilliard Hotels, LLC ("Hilliard" or the "Debtor") to move to assume or reject its Franchise Agreement with Hilton Franchise Holding LLC within a time period specified by this Court (the "Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, **then on or before twenty-one (21) days from the date set forth in the certificate of service for the Motion,** you or your attorney must:

File a response explaining your position by mailing your response by U.S. Mail to Clerk, United States Bankruptcy Court, 170 North High Street, Columbus, Ohio, 43215, OR your attorney must file a response using the court's ECF system.

The Court must **receive** your response on or before the date set forth above.

You must also send a copy of your response either by 1) the court's ECF System, or by 2) regular U.S. Mail to:

United States Trustee
170 North High Street, Suite 200
Columbus, Ohio 43215

David S. Catuogno, Esq.
K&L Gates LLP
One Newark Center, 10th Floor
Newark, NJ 07102

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without further notice or hearing.

322438153.1

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 7, 2025, a true and correct copy of the foregoing Motion and Notice were served via the Court's electronic case filing system on all ECF participants registered in this case at the email address registered with the court and by ordinary U.S. Mail on the following:

Denis E Blasius
Darlene E. Fierle
Ira H. Thomsen
140 N Main Street
Springboro, OH 4506
*(Debtor's Attorney)*

Welcome Group 2, LLC
Dayton Hotels, LLC
Hilliard Hotels, LLC
5955 E. Dublin Granville Road
New Albany, OH 43054
*(Debtor)*

U.S. Trustee
Asst US Trustee (Col)
Office of the US Trustee
170 North High Street
Suite 200
Columbus, OH 43215
*(U.S. Trustee)*

Pamela Arndt
DOJ-Ust
170 North High Street
Suite 200
Columbus, OH 43215
*(Attorney for U.S. Trustee)*

Tami Hart Kirby, Esq.
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, OH 45402-2028
*(Attorney for RSS WFCM2019-C50-OH WG2, LLC)*

322438153.1

Noah M. Schottenstein, Esquire
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, TX 75201
*(Attorney for Itria Ventures LLC)*

C. Kevin Kobbe, Esquire
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
*(Attorney for Itria Ventures LLC)*

David Alan Beck
Carpenter Lipps LLP
280 North High Street, Suite 1300
Columbus, OH 43215

Walter Reynolds, Esq.
1 S. Main Street, Suite 1600
Dayton, OH 45402

A Lawncare
3970 New Riley Road
Dresden, OH 43821

A.C.E.
7715 Northwest 22nd
Avenue - 312
Miami, FL 33147

AEP OH
P.O. Box 371496
Pittsburgh, PA 15250-7496

AES Ohio
P.O. Box 2631
Dayton, OH 45401-2631

Best Western International, Inc.
P.O. Box 842700
Los Angeles, CA 90084-5080

Charter Communications
P.O. Box 6030
Carol Stream, IL 60197-6030

322438153.1

City of Sidney
201 W. Poplar Street
Sidney, OH 45365

City of Sidney
201 W. Poplar Street
Sidney, OH 45365

City of Sidney - Utility
201 W. Poplar Street
Sidney, OH 45365-2720

Columbia Gas of Ohio, Inc.
290 W. Nationwide Blvd, Unit 114
Columbus, OH 43215

DeBra Kuempel
P.O. Box 701620
Cincinnati, OH 45270

DirectTV
P.O. Box 5006
Carol Stream, IL 60197-5006

Direct Tv
2260 E. Imperial Hwy.
El Segundo, CA 90245

Donnellon McCarthy
10855 Medallion Drive
Cincinnati, OH 45241

Epro Services
1491 Polaris Parkway, #217
Columbus, OH 43240

Expedia
P.O. Box 844120
Dallas, TX 75284-4120

Gordon Food Services, Inc.
P.O. Box 88029
Chicago, IL 60680-1029

322438153.1

Hilton
755 Crossover Lane
Memphis, TN 38117

IGEL
2040 Alum Creek Drive
Columbus, OH 43207

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Itria Ventures, LLC
1 Penn Plaza, Suite 3101
New York, NY 10119

Mailender
P.O. Box 23158
New York, NY 10087-3158

Mega City Fire & Security
8210 Expansion Way
Dayton, OH 45424

Miracle Method of Columbus
1575 Integrity Drive E
Columbus, OH 43209

Montgomery County Board of Comm.
451 W Third St.
Dayton, OH 45422

Montgomery County Convention Fac
22 E. 5th Street
Dayton, OH 45402

Montgomery County Environmental
1850 Spaulding Rd.
Kettering, OH 45432

Muskingum County Board of Commissioners
401 Main Street
Zanesville, OH 43701

322438153.1

Muskingum County Convention
Attn: Downtown CSR
113 N. 5th St.
Zanesville, OH 43701

Muskingum County Utilities
375 Richards Rd.
Zanesville, OH 43701

Ohio Bureau Of Workers' Compensation
30 W. Spring St.,
Columbus, OH 43215-2256

Ohio Department of Taxation
Attn: Bankruptcy Division
PO Box 530
Columbus, OH 43216

Ohio Department of Taxation
C/O Bankruptcy Division
30 East Broad Street, 21st Floor
Columbus, OH 43215

The Ohio Painting Company
3040 S. Tech Blvd.
Miamisburg, OH 45342

Onity, Inc.
4001 Fairview
Industrial Drive SE
Salem, OR 97302

Otis Elevator
321 S. Main Street
Dayton, OH 45402

Servicemaster
1524 E. 2nd Street
Dayton, OH 45403

Site Search, LLC
55 Buttercup Court
Marco Island, Fl 34145

322438153.1

Super 8 Worldwide Inc.,
22 Sylvan Way
Parsippany, NJ 07054

Sysco - Cincinnati
10510 Evendale Drive
Cincinnati, OH 45241

U.S. Small Business Administration
200 W. Santa
Boulevard, Suite 740
Santa Ana, CA 92701

Washington Township Trustees
8200 Mcewen Road
Dayton, OH 45458

Wilson Memorial Hospital
915 West Michigan Street
Sidney, OH 45365

Hillside Maintenance Company
PO Box 133
Greensburg, IN 47240

RSS WFCM2019-C50-OH WG2, LLC
200 South Biscayne Blvd.
Suite 3550
Miami, FL 33131

Shelby County Treasurer
Shelby County Annex
Floor 3
Sidney, OH 45365

U.S. Foods Inc.
98761 Collections Center Drive
Chicago, IL 60693

*/s/ David S. Catuogno*
David S. Catuogno

322438153.1